A01A1018. SWAIN v. THE STATE.
(552 SE2d 880)

PHIPPS, Judge.

On the night of January 20, 2000, Carol Swain's car crossed the centerline of traffic and collided head-on with another vehicle. She

[2] 274 Ga. 54 (548 SE2d 5) (2001).
[3] Id. at 56.
[4] 231 Ga. App. 82 (497 SE2d 640) (1998).
[5] 246 Ga. App. 623 (541 SE2d 444) (2000).

was charged with DUI to the extent she was a less safe driver, and a jury later found her guilty.[1] On appeal, Swain asserts that the trial court erred in admitting evidence that she refused to consent to a blood test for the presence of alcohol because an administrative law judge (ALJ) already had ruled at her driver's license suspension hearing that she did not refuse testing. She also argues that the trial court should have charged the jury that the smell of alcohol, alone, is insufficient to prove intoxication. Because the ALJ's finding had no preclusive effect in her criminal trial, and because Swain's requested jury charge did not fit the evidence, we affirm.

1. A motorist in Georgia who is suspected of driving under the influence of alcohol and who is asked to submit to a blood test for the presence of alcohol has the right to refuse the test, and the arresting officer must inform her of that right.[2] If she refuses to submit to the test, the Department of Public Safety may suspend her driver's license for a minimum of one year.[3] Moreover, evidence of her refusal may be admitted at a subsequent DUI prosecution, but only if she was properly informed of her right to refuse.[4]

In this case, the State sought to introduce testimony from the arresting officer that he asked Swain to submit to a test of her blood for the presence of alcohol, that he informed her of her right to refuse, and that she refused. Swain moved in limine to exclude this testimony, arguing that the issue of her refusal already had been decided by an ALJ at her driver's license suspension hearing.[5] At a pretrial hearing, Swain introduced into evidence a copy of the ALJ's decision, which reversed her license suspension and found that

> [a]ll provisions were not met for the suspension . . . as to [Swain] inasmuch as the [Department of Public Safety] failed to establish that . . . [a]t the time of the request for the test or tests, the arresting officer properly informed [Swain] of [her] implied consent rights and the consequences of submitting or refusing to submit to such test or tests.[6]

The trial court ruled that the ALJ's decision had no preclusive effect and that evidence of Swain's alleged refusal to submit to testing could be admitted at trial. We agree.

---

[1] Swain also was charged with and found guilty of driving on the wrong side of the road, but she does not appeal that conviction.

[2] OCGA § 40-5-67.1 (b).

[3] Id.

[4] *Moore v. State*, 217 Ga. App. 536, 537 (458 SE2d 479) (1995).

[5] See OCGA § 40-5-67.1 (g).

[6] A transcript from the administrative hearing was never admitted into evidence, although Swain states that one was made.

We have been asked several times to give preclusive effect in a criminal DUI prosecution to a judgment previously rendered at an administrative driver's license suspension hearing. Each time, we have refused. In *Sheffield v. State*,[7] the defendant sought to exclude evidence that he had refused a breath test on the ground that the Department of Public Safety's administrative action to suspend his driver's license had been dismissed. The defendant argued that the dismissal "rendered any evidence of his refusal inadmissible because to admit it would deny due process and equal protection, would constitute double jeopardy, [and] would constitute res judicata."[8] Two judges of this court disagreed, noting that the license suspension action had been dismissed because the arresting officer had failed to appear for the hearing. Thus, "[t]here was no determination at the administrative hearing that defendant did or did not refuse the test."[9] In addition, the *Sheffield* opinion noted that because the suspension proceedings were civil in nature, "their outcome does not control the admissibility in the criminal trial of evidence of refusal [to consent to testing]."[10]

In *Hunter v. State*,[11] the DUI defendant sought to introduce into evidence a letter from an administrative hearing officer stating, without explanation, that the defendant's "driver's license will not be suspended under the Implied Consent Law."[12] The defendant argued that the letter showed he did not refuse testing, but we affirmed the trial court's exclusion of the letter. We held:

> The letter proved only that the license suspension was withdrawn. It shed no light on whether defendant had refused the test; it did not contradict the evidence that he had. . . . Even if the doctrine [of collateral estoppel] applies to administrative license suspension hearings as related to D.U.I. criminal proceedings, the letter fell short of fulfilling the requirements for invoking the doctrine.[13]

Finally, in *Wyatt v. State*,[14] we ruled that evidence that the defendant's driver's license had not been suspended due to the arresting officer's failure to appear at the hearing was not relevant in his later DUI prosecution. We wrote that "[w]hat occurred at the

---

[7] 184 Ga. App. 141-142 (1) (361 SE2d 28) (1987) (physical precedent only).
[8] Id. at 141.
[9] Id.
[10] Id. at 142.
[11] 191 Ga. App. 769 (382 SE2d 679) (1989).
[12] Id. at 770.
[13] (Citation omitted.) Id. at 771.
[14] 179 Ga. App. 327-328 (1) (346 SE2d 387) (1986).

administrative hearing subsequent to appellant's arrest would have no bearing on whether or not he was driving under the influence of alcohol," which was the issue before the jury.[15]

This case differs in one important respect from *Sheffield, Hunter,* and *Wyatt.* The license suspension hearings in those cases did not result in decisions on the merits. Here, however, an evidentiary hearing was held, after which the ALJ made a specific finding that the State failed to show that the officer had properly informed Swain of her implied consent rights. Thus, this case squarely presents the question — as our previous cases did not — of whether preclusive effect should be given in a criminal DUI prosecution to administrative factfinding from a previous driver's license suspension hearing. We hold that there was no preclusive effect in this case.

Under Georgia law, administrative decisions may have a collateral estoppel effect in a subsequent judicial proceeding.[16] There are four requirements for application of the doctrine of collateral estoppel: (1) both proceedings must involve the same parties or their privies; (2) the issue must have been actually litigated and determined in the first proceeding; (3) that determination must have been essential to the judgment in the first proceeding; and (4) the party against whom the doctrine is asserted must have had a full opportunity to litigate the issue in question.[17]

We assume, without deciding, that the first three requirements for the doctrine are satisfied here. However, the record does not indicate that the State had a full opportunity at the license suspension hearing to litigate the question of whether Swain refused testing.

"The purpose of the driver's license suspension hearing is to provide a quick, informal procedure to remove dangerous drivers from Georgia's roadways and thereby protect public safety."[18] Accordingly, the driver must request the hearing within ten days of receiving notice of the right to a hearing, and the Department of Public Safety must hold the hearing within thirty days of the request.[19] The scope of the hearing is confined by statute to six discrete issues, and the hearing officer must issue a decision within five days of the hearing.[20] If the hearing officer sustains the suspension, the driver has the

---

[15] Id. at 328 (1); see also *Smith v. State,* 180 Ga. App. 309 (1) (349 SE2d 4) (1986) (relying on *Wyatt*).

[16] *Epps Air Svc. v. Lampkin,* 229 Ga. 792, 795 (2) (194 SE2d 437) (1972); *Blackwell v. Ga. Real Estate Comm.,* 205 Ga. App. 233, 234 (421 SE2d 716) (1992); *Hunter v. City of Warner Robins,* 842 FSupp. 1460, 1465 (M.D. Ga. 1994).

[17] See *Dickerson v. Dickerson,* 247 Ga. App. 812, 813 (545 SE2d 378) (2001); *Ervin v. Swift Adhesives,* 208 Ga. App. 265, 266 (1) (430 SE2d 133) (1993), overruled on other grounds, *Wickliffe v. Wickliffe Co.,* 227 Ga. App. 432, 434 (1) (489 SE2d 153) (1997).

[18] *Nolen v. State,* 218 Ga. App. 819, 822 (463 SE2d 504) (1995).

[19] OCGA § 40-5-67.1 (g) (1).

[20] OCGA § 40-5-67.1 (g) (2), (3).

right to seek judicial review of the decision, but there is no procedure for the State to appeal an adverse ruling.[21] Within the framework of this abbreviated procedure, the State has only a limited opportunity to litigate the issues, some of which may prove pivotal in a subsequent DUI trial.[22] Because the transcript from Swain's suspension hearing is not included in the record,[23] we must assume that the hearing was conducted in accordance with statutory procedures and that the State did not have a full opportunity to litigate the issue of whether Swain refused testing. Therefore, the State was not collaterally estopped from presenting evidence on that issue at Swain's DUI trial.

To hold otherwise would frustrate the purpose of the summary suspension hearing. In the words of the Supreme Court of Illinois,

> Given even the possibility that the results of a summary suspension hearing would act as collateral estoppel, the State would likely find it necessary to treat the suspension hearing as an integral part of the criminal trial rather than merely an administrative device at the disposal of the defendant in which the defendant can halt the otherwise automatic suspension of his driving privileges. The process would seldom, if ever, be swift.[24]

We note that nearly every state that has considered this question has reached the same conclusion.[25]

2. Swain also asserts that the trial court erred by failing to give her proposed jury charge that "the mere fact that the Defendant had an odor of alcohol on his/her breath is not sufficient, in and of itself, to give rise to an inference that he/she was intoxicated." We disagree.

Swain's requested charge was taken almost verbatim from our decision in *Clay v. State*.[26] But it is not always appropriate to use lan-

---

[21] OCGA § 40-5-67.1 (h).

[22] For example, the hearing officer is authorized to decide whether the arresting officer had probable cause for the arrest. See OCGA § 40-5-67.1 (g) (2) (A).

[23] Swain asserts that she tried to place the transcript into evidence, but the trial court refused to admit it. However, the record shows that Swain merely suggested that the court review the transcript "if it would be a time-saver," and the court declined that offer. It was Swain's responsibility to perfect the record. See *Macko v. City of Lawrenceville*, 231 Ga. App. 671, 673 (1) (499 SE2d 707) (1998).

[24] *People v. Moore*, 138 Ill.2d 162 (561 NE2d 648, 652) (1990).

[25] See, e.g., id.; *People v. Lalka*, 113 Misc.2d 474 (449 NYS2d 579) (N.Y. City Ct. 1982); *State v. Warfield*, 854 SW2d 9 (Mo. App. 1993); *State v. Ratliff*, 304 Ore. 254 (744 P2d 247) (1987); *State v. Bacote*, 331 S.C. 328 (503 SE2d 161) (1998); *State v. Cassady*, 140 N.H. 46 (662 A2d 955) (1995); *Jones v. City of Lynchburg*, 23 Va. App. 167 (474 SE2d 863) (1996); *Janes v. State*, 350 Md. 284 (711 A2d 1319) (1998); *State v. Stearns*, 159 Vt. 266 (617 A2d 140) (1992); *Reynolds v. State*, 4 SW3d 13 (Tex. Crim. App. 1999).

[26] 193 Ga. App. 377, 379 (2) (387 SE2d 644) (1989).

guage from appellate decisions in a jury charge, even though the language "may embody sound principles of law."[27] Rather, jury charges must be tailored to the evidence presented in the case.[28] As the evidence in *Clay* differed from the evidence here, the requested charge was not appropriate.

In *Clay*, the jury found the defendant guilty of DUI on the basis of the arresting officer's testimony that he had bloodshot eyes and smelled of alcohol. However, there was evidence that the defendant's eyes normally appeared red, and the officer conceded that his speech had not been slurred, that he had not been staggering, that he had not been given field sobriety tests, and that his driving had not been unusual or erratic. Accordingly, we held that the smell of alcohol on the defendant's breath, alone, was not sufficient to support his conviction.[29]

In this case, the evidence of Swain's intoxication was not limited to testimony that she smelled of alcohol. There also was evidence that she was driving erratically and caused a head-on collision; that after the collision she acted confused, did not respond to questions, and walked unsteadily; and that she told the arresting officer that she had had "way too much" to drink.[30] In light of this additional evidence, the trial court was not required to instruct the jury that the smell of alcohol is not by itself sufficient to demonstrate intoxication.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 20, 2001 —
RECONSIDERATION DENIED AUGUST 8, 2001 — 

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Gwendolyn R. Keyes, Solicitor-General, Frank M. Gaither, Jr., Assistant Solicitor-General*, for appellee.

---

[27] *Smith v. State*, 202 Ga. App. 701, 702 (2) (415 SE2d 495) (1992), disapproved on other grounds, *State v. O'Donnell*, 225 Ga. App. 502, 505 (2) (484 SE2d 313) (1997).

[28] *Randolph v. State*, 246 Ga. App. 141, 145 (2) (538 SE2d 139) (2000).

[29] *Clay*, supra at 379.

[30] Swain did not refute this testimony, although she did present the testimony of an expert witness who opined that her confused state was the result of shock, not intoxication.