S13A0188. MALLOY v. THE STATE.
(744 SE2d 778)

THOMPSON, Presiding Justice.

Appellant Tyrone Cecil Malloy, a Georgia gynecologist, was indicted along with his office manager on two counts of Medicaid fraud in violation of OCGA § 49-4-146.1 (b) (2).[1] Specifically, appellant was charged with knowingly and wilfully accepting medical assistance payments to which he was not entitled and in amounts greater than he was entitled from the State of Georgia Medicaid program because the services charged for were either "associated with the performance of elective abortions," or had not been performed. Prior to the indictment, the Program Integrity Unit of the

---

[1] OCGA § 49-4-146.1 (b) (2) makes it unlawful for any person or Medicaid provider "knowingly and willfully to accept medical assistance payments to which he or she is not entitled or in an amount greater than that to which he or she is entitled or knowingly and willfully to falsify any report or document required under this article."

Georgia Department of Community Health (DCH)[2] had conducted a review of appellant's clinic looking for violations of the "Hyde Amendment" which prohibits the use of federal funds to pay for elective abortions. Based on its findings, DCH referred appellant's case to the State's Medicaid Fraud Control Unit for a full investigation, while concurrently instituting a "withhold" on reimbursements to appellant's Medicaid provider number.[3]

Appellant requested an administrative review of the withhold by DCH and, in response, received a letter informing him that based on its determination that appellant had billed abortion-related services to Medicaid the withhold would remain in effect. Appellant then requested and was granted an administrative hearing before an administrative law judge (ALJ) on the issue of the withhold. The ALJ subsequently issued an initial decision in favor of appellant reversing DCH's decision to maintain the withhold. Although noting that the State's interpretation of the services as abortion-related was reasonable, the ALJ determined that the record did not support a conclusion that appellant wilfully misrepresented a material fact and thus could not support a finding of fraud or wilful misrepresentation under the Medicaid program.[4] As DCH neither filed a motion for reconsideration or rehearing with respect to the ALJ's decision nor sought to

---

[2] DCH is the agency responsible for administering the Medicaid program for the State of Georgia and is required to ensure that payments are made to providers in accordance with federal law and regulations. 42 USC § 1302; 42 CFR § 456.22. The agency is also required to have methods and criteria for identifying suspected fraud cases. 42 CFR § 455.1 et seq. Chapter 403 of DCH's 2010 provider manual sets forth the responsibilities of the Program Integrity (PI) Section of the Office of the Inspector General relating to its investigation of possible fraud or abuse cases and specifically provides that "[t]he primary responsibility of PI is to develop cases for referral to the State Healthcare Fraud Unit or the appropriate district attorney for prosecution." Part I, Policies and Procedures for Medicaid/Peachcare for Kids, Chapter 403.

[3] Applicable federal regulations in 2010 provided for a procedure called "withholding of payments in cases of fraud or willful misrepresentation" to be used to temporarily suspend payments to Medicaid providers during the investigation of suspected fraud. 42 CFR § 455.23. DCH implemented this regulation in its 2010 provider manual. See Part I, Policies and Procedures for Medicaid/Peachcare for Kids, Chapter 408.

[4] Among the ALJ's findings were that appellant's gynecology practice at the facility in question performed abortions for approximately 50 percent of its clients, that appellant had never performed abortions necessary to save the life of the mother or to terminate a pregnancy resulting from rape or incest and thus had never billed Medicaid for abortion-related expenses requiring a certification of necessity for abortion pursuant to Section 904.2, of Part II, Policies and Procedures for Physician Services, p. IX-52 (2008) and p. IX-50 (2010), that while the definition of "expenditure of abortion" is clear within the context of services covered under Section 904.2, it is not clearly enunciated for expenses related to abortions not covered under this section, and that the parties agreed that initial lab tests for patients presenting with diagnoses of amenorrhea to determine pregnancy and gestational status were appropriately billed to Medicaid pursuant to Part II, Policies and Procedures for Family Planning Clinic Services, Section 901, p. IX-1 (2008) and (2010) in any case where a subsequent abortion was performed either by a different provider that same day or by appellant on a different day.

reject or modify it pursuant to the provisions of OCGA § 50-13-41 (e) (1),[5] the ALJ's decision was affirmed by operation of law, and effectively became the decision of DCH. See *Alexander v. Dept. of Revenue*, 316 Ga. App. 543 (728 SE2d 320) (2012). Thereafter, the "withhold" status was terminated, and the withheld funds were released to appellant.

During the period appellant was challenging the withhold, the State's Medicaid Fraud Control Unit continued to conduct its own investigation into the fraud allegations, including executing a search warrant at appellant's clinic. Despite DCH's affirmance of the ALJ's decision finding no evidence that appellant had committed fraud or wilful misrepresentation under the Medicaid program, the State decided to seek criminal charges against appellant and his office manager and, on December 8, 2011, a DeKalb County grand jury issued indictments.

In response to the indictments, appellant filed a special demurrer and motion to strike surplusage, a plea in abatement based on collateral estoppel, and a motion to dismiss his indictment claiming the statute under which he was charged was unconstitutionally vague. Following separate hearings, the trial court denied each of appellant's motions via separate orders. After his application for certificate of immediate review was denied by the trial court, appellant filed a notice of appeal seeking review of the trial court's orders.

The State moved to dismiss the appeal arguing that the trial court's orders either were not appealable or that jurisdiction belonged in the Court of Appeals. For the reasons that follow, we deny the State's motion to dismiss and affirm the decisions of the trial court.

1. Addressing the issue of jurisdiction, we find the instant appeal is properly before this Court. Appellant seeks review of three rulings made by the trial court: the denial of his plea in abatement based on collateral estoppel, the denial of his motion to dismiss in which he challenged the constitutionality of OCGA § 49-4-146.1 (b) (2) as applied to him, and the denial of his special demurrer and motion to strike surplusage in the indictment. First, we note that the trial court's denial of appellant's plea in abatement based on collateral estoppel, a motion which in essence constitutes a plea in bar based on double jeopardy, is directly appealable. See *Patterson v. State*, 248 Ga. 875, 876 (287 SE2d 7) (1982) (timely filed plea of double jeopardy is directly appealable). Second, given appellant's right to directly appeal

---

[5] This Code section provides a reviewing agency such as DCH 30 days in which to reject or modify the initial decision of an ALJ, and if it fails to do so within 30 days of the initial decision, "the decision of the administrative law judge shall stand affirmed by the reviewing agency by operation of law." OCGA § 50-13-41 (e) (1).

the denial of that motion, he was entitled to seek appellate review of the trial court's denial of his other two motions. See OCGA § 5-6-34 (d). Finally, because this Court has jurisdiction over appellant's claim that the trial court erred in rejecting his constitutional challenge to OCGA § 49-4-146.1 (b) (2) as applied, this Court also has jurisdiction to consider the other allegations of error presented on appeal. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1); see also *State v. Boyer*, 270 Ga. 701, 702 (512 SE2d 605) (1999).

2. Next, we address appellant's contention that the trial court erred in denying his plea in abatement based on collateral estoppel. Appellant argues that the doctrine of collateral estoppel precludes the State from prosecuting him for Medicaid fraud as set forth in the indictment because the ultimate issue in the criminal prosecution, i.e., whether he knowingly and wilfully accepted medical assistance payments to which he was not entitled, was decided adversely to the State in the earlier administrative proceeding. Appellant claims that the trial court erred in applying a double jeopardy multiple prosecution analysis under *Hudson v. United States*, 522 U. S. 93, 98-99 (118 SCt 488, 139 LE2d 450) (1997) to his collateral estoppel claim and, more specifically, erred in determining that the doctrine of collateral estoppel did not apply.[6]

While we agree with appellant that the trial court should have analyzed the issue pursuant to the requirements for application of the doctrine of collateral estoppel rather than multiple punishment, the primary question presented, i.e., whether a determination made in an administrative proceeding has preclusive effect in a subsequent criminal proceeding pursuant to the doctrine of collateral estoppel, is one which has not been conclusively addressed by this Court. Based on our consideration of this case, we find that the trial court's determination that the ALJ's civil ruling had no preclusive effect on the State's subsequent criminal prosecution of appellant is correct.

(a) The United States Supreme Court has held that the doctrine of collateral estoppel is incorporated in the Fifth Amendment's guarantee against double jeopardy. *Ashe v. Swenson*, 397 U. S. 436, 443 (90 SCt 1189, 25 LE2d 469) (1970). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between

---

[6] Concluding that the proper analysis was one done under the principle of double jeopardy as set forth in *Hudson*, supra, the trial court determined that as the temporary withholding of payments which led to the administrative hearing in the instant case was a civil penalty which was not so "punitive" in nature as to have been transformed into a criminal penalty, double jeopardy, and thus collateral estoppel, did not apply, see *Kennedy v. Mendoza-Martinez*, 372 U. S. 144, 168 (83 SCt 554, 9 LE2d 644) (1963).

the same parties in any future lawsuit." Id. Collateral estoppel may affect a later criminal prosecution in two ways: (1) it may operate to bar the introduction of certain facts necessarily established in a prior proceeding; or (2) it may completely bar a subsequent prosecution where one of the facts necessarily determined in the former proceeding is an essential element of the conviction sought. *United States v. De Marco*, 791 F2d 833, 836 (11th Cir. 1986); *United States v. Mulherin*, 710 F2d 731, 740 (11th Cir. 1983). See *State v. Tate*, 136 Ga. App. 181, 185 (220 SE2d 741) (1975).

Even before *Ashe*, Georgia courts recognized the doctrine of collateral estoppel in criminal, as well as civil cases.[7] See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (2) (463 SE2d 5) (1995); *Lindsey v. State*, 227 Ga. 48, 52 (2) (178 SE2d 848) (1970); *Harris v. State*, 193 Ga. 109, 110 (17 SE2d 573) (1941). "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." (Citation and punctuation omitted.) *Jordan v. Board of Public Safety*, 253 Ga. App. 339, 340 (559 SE2d 94) (2002). See *Phillips v. State*, 272 Ga. 840, 841 (537 SE2d 63) (2000). Moreover, the doctrine provides that "an issue previously litigated and adjudicated on the merits cannot be relitigated even as part of a different cause of action." *Jordan*, supra at 342.

Administrative decisions, however, are not generally given collateral estoppel effect by Georgia courts in subsequent judicial proceedings unless certain requirements are met. *Swain v. State*, 251 Ga. App. 110, 113 (552 SE2d 880) (2001). See *Epps Air Svc. v. Lampkin*, 229 Ga. 792, 795 (2) (194 SE2d 437) (1992); *Blackwell v. Ga. Real Estate Comm.*, 205 Ga. App. 233, 234 (421 SE2d 716) (1992). Specifically, administrative decisions may have a collateral estoppel effect in subsequent judicial proceedings where: (1) both proceedings involve the same parties or their privies; (2) the issue was actually litigated and determined in the first proceeding; (3) the determination was essential to the judgment in the first proceeding; and (4) the party against whom the doctrine is asserted had a full opportunity to litigate the issue in question. *Swain*, 251 Ga. App. at 113. Compare

---

[7] In its argument to this Court, the State cites *Dorsey v. State*, 251 Ga. App. 640, 642 (554 SE2d 278) (2001) for the proposition that "the civil doctrines of 'res judicata' and 'collateral estoppel' have no real application to a criminal case." (quoting a footnote in *Carter v. State*, 231 Ga. App. 42, 43, n. 2 (497 SE2d 812) (1998)). To the extent that the decisions in *Dorsey* and *Carter* stand for the proposition that collateral estoppel cannot be applied in a criminal proceeding, they are disapproved.

*Allen v. Santana*, 303 Ga. App. 844, ·847 (1) (695 SE2d 314) (2010) (collateral estoppel did not apply where issue deemed not essential to first judgment).

Applying these requirements, Georgia courts have repeatedly held that questions of fact ruled upon by an administrative body are thereafter precluded from relitigation in civil suits by the doctrines of res judicata and collateral estoppel, see *Jordan*, supra at 342; *Blackwell*, supra at 234. Less clear, however, are rulings with respect to the collateral estoppel effect in subsequent criminal proceedings. See *Swain*, supra at 113-114; *Culver v. State*, 254 Ga. App. 297, 303 (1) (c) (562 SE2d 201) (2002), rev'd on other grounds, *State v. Kell*, 276 Ga. 423 (577 SE2d 551) (2003). In both *Culver* and *Swain*, the Court of Appeals acknowledged the possible application of collateral estoppel to preclude the State from raising issues allegedly decided in an earlier administrative action in subsequent criminal proceedings. Id. However, in each of these cases the court found insufficient evidence in the record showing the State had a full opportunity to litigate the issue in question at the administrative hearing and/or to seek judicial review of any adverse decision. Id.

Appellant asserts that the requirements for application of the doctrine of collateral estoppel have been met in his case because: (1) DCH is considered the State of Georgia pursuant to OCGA § 50-21-22, thus both this case and the administrative hearing involved the same parties; (2) the same issues were litigated and decided in the administrative hearing wherein the ALJ found that the evidence did not support a determination of fraud or wilful misrepresentation under the Medicaid program; (3) the ALJ's findings that appellant had not engaged in any fraudulent conduct nor wilful misrepresentation were essential to the judgment reversing the withhold on appellant's Medicaid provider number; and (4) the State had a full opportunity to litigate the issues before the ALJ and failed to file for reconsideration or rehearing, thus adopting the ALJ's decision. Appellant's argument is persuasive in many respects and, for purposes of this opinion, we accept without deciding that the first three requirements have been met. However, based on our review, it is the fourth requirement which must inform our decision in this case.

(b) In answering the question of whether the State had a full opportunity to litigate the issue of whether appellant knowingly and wilfully accepted medical assistance payments to which he was not entitled, it is important to consider differences in the nature of the respective proceedings. What appears to have been a full opportunity to litigate in the context of the first proceeding, may not be sufficient when viewed in the context of the second proceeding. See Restatement (Second) of Judgments § 28 (3).

As a general rule, the weight of authority points to a conclusion that administrative decisions should not be the basis for application of collateral estoppel against the government in criminal proceedings. See *Cook v. State*, 921 S2d 631, 633 (Fla. 2d DCA 2005) (conducting a survey of the law addressing this question in the context of probation and parole revocation proceedings, professional disciplinary proceedings, public employee disciplinary proceedings, driver's license revocation proceedings, and welfare fraud proceedings); *State v. Williams*, 132 Wash2d 248 (937 P2d 1052) (1997). Noting that nearly every state which has considered this question with respect to driver's license suspension hearings has determined such hearings did not provide the government with a full opportunity to litigate the issues, the Georgia Court of Appeals in *Swain* observed that to hold administrative decisions have preclusive effect in later criminal proceedings "would frustrate the purpose of the summary suspension hearing." *Swain*, supra, 251 Ga. App. at 114.

Other courts similarly have refused to give preclusive effect to administrative rulings in a criminal proceeding. In a case with issues similar to this one, the Supreme Court of Washington held that the doctrine of collateral estoppel did not preclude the State from criminally prosecuting a defendant for welfare fraud despite a prior administrative determination that the defendant had acted unintentionally. *Williams*, supra, 132 Wash2d at 250. Although deciding that the first three requirements for application of the doctrine of collateral estoppel had been met, the *Williams* court nonetheless determined that "public policy" simply would not allow an administrative hearing to prevent the State from criminally prosecuting the defendant for two reasons. Id. at 256-257.[8] First, the purposes underlying the administrative hearing and the criminal trial were completely different as the administrative proceeding was intended to determine whether the defendant had received overpayments of public assistance, while the purpose of the criminal prosecution was to determine whether the defendant had committed a crime. Id. at 257. Second, allowing an administrative proceeding to bar a criminal action would

---

[8] The court in *Williams* based its public policy analysis on the fourth prong for application of the doctrine of collateral estoppel under Washington law which requires that the doctrine "not work an injustice." While this differs somewhat from Georgia's requirement that the party against whom the doctrine of collateral estoppel is asserted must have had a "full opportunity to litigate the issue in question," we find the analysis sufficiently similar for purposes of this opinion.

have broad consequences requiring the State

> to marshall all of the prosecution's potential witnesses and evidence at the administrative level . . . leav[ing] district attorney offices to allocate a greater proportion of their ever-decreasing resources to administrative matters, rather than reserving these scarce resources for the actual prosecution of serious criminal cases in court.

*Williams*, supra at 258, quoting from *People v. Sims*, 32 Cal3d 468 (651 P2d 321, 337, 186 Cal. Rptr. 77) (1982) (Kaus, J., dissenting).

Likewise, in *Cook v. State*, the Florida District Court of Appeals concluded that the State was not collaterally estopped in a criminal proceeding from presenting similar fact evidence which had been determined in a prior administrative proceeding to be lacking in credibility, observing that

> [a]llowing the course of proceedings in a criminal case to be determined by the litigation failure of a state agency with no constitutional authority with respect to criminal proceedings would be in derogation of the constitutional authority of the state attorney.

*Cook*, supra at 644.[9]

We find the rationale of these opinions persuasive. To allow the decision of an administrative law judge to subvert the constitutional authority of the district attorneys and attorney general of this state would be in derogation of our Constitution. At the same time, the practical effect of holding that a finding in an administrative hearing could have a determinative effect in a subsequent criminal trial would impose upon the State a virtually insurmountable burden of investigating and preparing for administrative matters in the same manner in which it prepares a criminal prosecution. Here, the only purpose of the administrative hearing was to determine whether the DCH withhold on appellant's Medicaid reimbursements would continue during the pendency of the State Medicaid Fraud Control Unit's investigation. To require the State to treat the administrative hearing as an integral part of the criminal trial rather than merely as an administrative device allowing the defendant to halt the temporary

---

[9] Unlike in this case and in *Williams*, supra, the *Cook* court additionally determined that there was no privity between the Florida Department of Education, Education Practices Commission which issued the administrative decision and the State of Florida despite the fact that the Commission was an agency of the State because the Commission's purpose of disciplining educators was separate and distinct from the prosecution of crimes. See *Cook*, supra at 643-645.

suspension of reimbursements to his Medicaid provider number during the course of the investigation would frustrate the purpose of the administrative hearing. See *Swain*, supra at 114. The dissimilar jurisdictions of the hearing officer and the criminal court lead us to conclude that the State's interest in having guilt or innocence determined is not adequately served in an administrative proceeding.

Given the different purposes served by the administrative proceeding and the criminal proceeding in the instant case, we find that the State did not have a full opportunity to litigate the issue and conclude that preclusive effect should not be given to the administrative determination.

3. Appellant contends the trial court erred in denying his motion to dismiss the indictment on the basis that OCGA § 49-4-146.1 (b) (2) as applied to him is unconstitutionally vague. The statute provides, in pertinent part, that it is unlawful for a Medicaid provider to knowingly and wilfully "accept medical assistance payments to which he or she is not entitled or in an amount greater than that to which he or she is entitled." Id. The indictment alleges appellant violated the statute by "causing claims to be submitted in an amount greater than that to which [he was] entitled to receive because the services were associated with the performance of elective abortions," and ineligible for Medicaid reimbursement under the Hyde amendment.[10] Appellant argues that the statute is unconstitutionally vague as applied to him in that it failed to provide him with sufficient notice of the prohibited conduct with which he is charged. We disagree.

Appellant has not raised a First Amendment challenge to the statute, thus his vagueness argument must be decided on the particular facts of this case. See *Boyer*, supra at 702.

> The Due Process Clause requires that the law give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated. *United States v. Harriss*, 347 U. S. 612, 617 (74 SC 808, 98 LE 989) (1954); *Hall v. State*, 268 Ga. 89, 92 (485 SE2d 755) (1997). Vagueness may invalidate a criminal law on either of two bases: a statute may fail to provide notice sufficient to enable ordinary people to understand what conduct it prohibits or requires, or the statute may authorize and encourage arbitrary and discriminatory

---

[10] The indictment also charges appellant with billing Medicaid for "detailed ultrasounds" which had not been performed. Although appellant contends the State is aware that the ultrasounds were actually performed and the discrepancy is simply due to a coding error, this is a question of fact. In any event, these counts of the indictment are not affected by appellant's constitutional challenge in this appeal.

enforcement. *City of Chicago v. Morales*, 527 U. S. 41, 55 (119 SC 1849, 144 LE2d 67) (1999); *Roemhild v. State*, 251 Ga. 569 (2) (308 SE2d 154) (1983).

*Santos v. State*, 284 Ga. 514 (1) (668 SE2d 676) (2008). Appellant complains that the statute fails to reference, define or give any guidance distinguishing between permissible diagnostic services to determine pregnancy and gestational status for Medicaid patients and those "associated with the performance of elective abortions." He argues that as the only definition of "abortion-related services" or of services "associated" with abortions in the Medicaid manual is in section 904.2 pertaining to abortions performed for medical necessity, a provision[11] under which the parties agree appellant never sought payment, the statute did not give him sufficient notice as to what constitutes prohibited criminal conduct and makes the law susceptible to arbitrary and selective enforcement. See *Hall v. State*, 268 Ga. 89, 92 (485 SE2d 755) (1997). See also *United States v. Lanier*, 520 U. S. 259, 266 (117 SCt 1219, 137 LE2d 432) (1997) (court must resolve statute's ambiguity in favor of applying it only to conduct which is clearly covered).

The trial court found that although the statute did not explicitly state all the manners in which one could violate OCGA § 49-4-146.1 (b) (2), the procedures for which one would not be entitled to payment through the program were listed in the Medicaid manual; thus, the statute in conjunction with the manual provided appellant with appropriate notice as required by law. The court also concluded that when the facts in the indictment were combined with the statute there was no vagueness. Finally, the court rejected appellant's claim that the statute was susceptible to subjective application by law enforcement — noting that either there was enough evidence to meet the statute's elements or not. We agree with the trial court.

The State's allegations of fact as recited in the indictment coupled with the applicable law, OCGA § 49-4-146.1 (b) (2), show appellant had sufficient notice of the prohibited conduct. See *Stewart v. State*, 246 Ga. 70, 71 (268 SE2d 906) (1980).[12] Whether appellant

---

[11] This section specifically states:
[T]he division will reimburse for abortions performed on Medicaid eligible patients if the life of the mother would be endangered if the fetus were carried to term or if the mother was a victim of rape or incest. . . . [In] compliance with 42 CFR 441.206, this documentation is required for any expenditures for abortions or other medical procedures otherwise provided under Sec. 441.203, which will include associated services such as lab tests or ultrasound studies.

[12] In appeals involving a pretrial constitutional challenge, the court is "required to accept well-pleaded allegations of the indictment as the hypothesis for decision" and is, therefore,

was "entitled" to certain payments is merely a question of fact. Use of the words "knowingly" or "willful" in the construction of a statute satisfies a scienter requirement that mitigates a law's vagueness by placing a person on notice as to what conduct is prohibited. See *Screws v. United States*, 325 U. S. 91, 102 (65 SCt 1031, 89 LE 1495) (1945). An ordinary person can easily understand that knowingly taking money from Medicaid to which one is not entitled is prohibited conduct. Further, appellant's contention that the statute is unconstitutionally vague with respect to expenditures related to abortions because the manual is too vague on this subject is relevant to the issue of whether appellant knowingly made false claims, a question of fact which does not overcome the presumption that the statute is constitutional. See generally *Buice v. Dixon*, 223 Ga. 645, 646-647 (157 SE2d 481) (1967). Accordingly, we find that OCGA § 49-4-146.1 (b) (2) as applied in this case is not unconstitutionally vague, and we affirm the trial court's denial of appellant's motion to dismiss the indictment.

4. Finally, appellant asserts the trial court erred in denying his special demurrer and motion to strike surplusage. He argues the extensive "background" section included in each count contains politically charged, misleading and prejudicial surplusage likely to diminish the presumption of innocence to which he is entitled and is prejudicial and redundant.

Having filed a timely special demurrer objecting to the form of the indictment, appellant is entitled to an indictment perfect in form and substance. *State v. Corhen*, 306 Ga. App. 495, 498 (700 SE2d 912) (2010). However, mere surplusage does not vitiate an otherwise valid indictment. *State v. Barnett*, 268 Ga. App. 900, 901 (602 SE2d 899) (2004); *Eidson v. State*, 262 Ga. App. 664 (586 SE2d 362) (2003). The trial court found that the challenged language accurately described the offenses charged and made the charges more easily understood by explaining why federal funds could not be applied to elective abortions. The language of an indictment is to be interpreted liberally in favor of the State and a demurrer raising special objections strictly construed against the pleader, see *Johnson v. State*, 233 Ga. App. 450, 451 (504 SE2d 290) (1998). We find no error in the trial court's denial of appellant's special demurrer and motion to strike surplusage.

*Judgment affirmed. All the Justices concur.*

---

"bound by the well-pleaded allegations of the indictment. . . ." *United States v. Nat. Dairy Products Corp.*, 372 U. S. 29, 33 (II), n. 2 and 37 (IV) (83 SCt 594, 9 LE2d 561) (1963). Thus, arguably in the instant case, the only relevant facts are the terms of the statute itself and the allegations of the indictment or accusation. See *Boyer*, supra, 270 Ga. at 705 (Carley and Thompson, JJ., concurring specially).

DECIDED JUNE 17, 2013 —
RECONSIDERATION DENIED JULY 11, 2013.

*M. Katherine Durant, D. Lowell Thomas, Thelma W. Cummings Moore*, for appellant.

*Samuel S. Olens, Attorney General, Nancy B. Allstrom, Senior Assistant Attorney General, Henry A. Hibbert, Assistant Attorney General*, for appellee.