[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14557
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00016-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES KEITH SUMNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 1, 2013)

Before CARNES, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Charles Sumner appeals his convictions for attempting to persuade, induce,

or entice a minor to engage in unlawful sexual activity, 18 U.S.C. § 2422(b), and

traveling in interstate commerce for the purpose of engaging in sexual activity with

a minor, 18 U.S.C. § 2423(b).  Sumner challenges the admission of 85 sexually suggestive photographs of young women and girls that were found in his possession, the sufficiency of the evidence to rebut his defense of entrapment, and the district court's jury instructions on the issue of entrapment.

## I.

On October 12, 2011, Sumner engaged in separate online conversations with two undercover police officers about having sex with minors.  At 3:20 p.m. on that date, Chad Hoffman of the Florida Department of Law Enforcement posted a personal advertisement in the "causal encounters" section of Craigslist, entitled "Yung one ready for the experience, W4M."[1]  Sumner responded to the ad within an hour and requested photographs.  Hoffman replied that he was a single mother seeking a sexual mentor for her 14-year-old virgin daughter, and Sumner offered to provide the fictitious child with a "slow, loving, kind experience."  Hoffman reiterated that the daughter was only 14 years old and sent a photograph of a minor girl to Sumner, to which Sumner responded that he was "ready when y'all are." After exchanging several more messages with Sumner, Hoffman discontinued the conversation once he was made aware that Sumner was simultaneously communicating with another undercover officer, Laura Gereg of the Tallahassee Police Department, posing as a different 14-year-old girl.

---

[1] The acronym "W4M" indicates that a woman is seeking a male companion.

Gereg had been involved in an undercover operation targeting people using the internet to solicit children for sex and, as part of that operation, had posted a series of personal ads on Craigslist.  At 4:52 p.m. on October 12, 2011, Gereg posted one such ad entitled "Looking for Daddy Experience, W4M."  Sumner responded to that posting within less than an hour, stating "what's next is we will have some fun" and "I'll take good care of you, sweetie."  He also requested photographs.  Gereg replied that she was a "yunger girl" who wanted a "daddy experience, older or experienced cuz I ain't."  Sumner assured the girl that he was "older," "very experienced," and quite capable of providing her with "something you will remember," including a foreplay session that would last "longer than 30 minutes."  He boasted of his "stamina and sexual drive," stressed that he was "good in bed," and offered to take the child to "a house on the beach."  After Gereg apprised Sumner that she was "almost 15" and lived in Tallahassee, Sumner responded, "[I'm] down baby don't want no trouble but I would love to teach you." He also emphasized the need for discretion and added, "[I'm] ready r you."

Sumner sent a picture of himself to Gereg, who reciprocated by forwarding Sumner a photograph of a minor girl.  The two exchanged several more messages, and after an hour-long lull in the conversation, Gereg inquired, "so what happened????"  At 11:27 p.m., a little less than three hours after Gereg's query, Sumner apologized for the delay and explained that he "had an emergency at

work" and that his "phone wouldn't send you a message." He then reprised his usual refrain, "Are you ready, sweetie?" After a reinvigorated round of sexually explicit messages, Gereg told Sumner that her parents were not at home and invited him over. Sumner asked for the address, her phone number, and cautioned, "[if we] get caught, you will tell them you wanted it and it was not forced on you in any way." The two exchanged a number of text messages as Sumner drove 29 miles, in the middle of the night, from his home in Thomasville, Georgia, to an undercover residence in Tallahassee, Florida.

Sumner was arrested as soon as he arrived at the Florida home and knocked on the front door. A search of his truck revealed a small trove of sexual paraphernalia, including a box of condoms, five different types of lubricant, sex toys, a vibrator, and spare batteries. Sumner was also in possession of prescription narcotics. Computers and cell phones seized from Sumner's residence contained 85 images of young-looking females in sexually suggestive poses or predicaments. A significant number of those photographs depicted nude or scantily clad females who appeared to be close to 18 years of age. Most, if not all, of the images that unambiguously depicted minors contained no explicit nudity, although one series of photographs portrayed an adult male groping and kissing a sleeping, pajama-clad child.

4

Sumner was indicted on one count of attempting to persuade, induce, or entice a minor to engage in sexual activity and one count of traveling in interstate commerce for the purpose of engaging in sexual acts with a child. He proceeded to trial and pursued an entrapment defense. In order to rebut that defense and establish Sumner's intent to commit the charged offenses, the government sought to introduce the 85 images seized from his computers and cell phones. Sumner objected on grounds of irrelevance and undue prejudice. The district court admitted the photographs over Sumner's objection, finding that they were relevant to the question of intent and not unduly prejudicial. The court, however, gave the jury a limiting instruction on the appropriate use of the photographs, explaining that Sumner was not on trial for possessing those photographs and that the jury could consider them only on the issue of Sumner's intent or purpose to commit the specific offenses with which he was charged.

The district court also gave the following instruction on the issue of entrapment:

> A defendant is entrapped when a law enforcement officer persuades the defendant to commit a crime of a kind that the defendant did not previously intend to commit. So if the defendant did not previously intend to commit a crime of this kind — to engage in sexual activity with an underage person if the opportunity arose — the defendant was entrapped. The law forbids convicting an entrapped defendant; and, as I said before, the burden is on the government to prove beyond a reasonable doubt that the defendant was not entrapped.

5

But there is no entrapment when a defendant is willing to break the law, and the government merely provides what appears to be a favorable opportunity for the defendant to commit the crime.

Thus, a law enforcement officer can properly pretend to be someone else — to go undercover — in an effort to catch a defendant who is looking for an opportunity to commit a crime. An officer can pretend to be under age 16, can pretend to be willing and even eager to have sex with an adult, and can encourage the defendant to show up for that purpose at the site of the sting. The officer need not discourage the defendant from committing a crime.

In short, the critical question is not what the officer was trying to do, or whether the fictitious underage person was willing or even eager to engage in sexual activity. <u>The critical question is whether, before the officer posted the advertisement on Craigslist, the defendant was inclined to cause an underage person to engage in sexual activity if the opportunity arose, or whether, instead, the defendant would never have done something of this kind had the undercover agent not persuaded him to do so.</u>

Sumner did not object to the district court's jury instructions. The jury convicted him of both counts with which he was charged and he was eventually sentenced to 120 months imprisonment.

## II.

Sumner contends that the district court abused its discretion in admitting the 85 sexually suggestive photographs of girls and young women because they are irrelevant to the issue of whether he intended to commit the charged offenses or was predisposed to do so. Sumner characterizes the photographs as depicting "[p]ornographic images of adult women and non-pornographic images of minors," and asserts that possession of legal photographs, even of young girls, has no

tendency to demonstrate an intent or inclination to violate child sex laws.  He also contends that the images are not probative of predisposition or intent because the prosecution did not even argue at trial that he obtained or viewed them before his first contact with the undercover officers.  Sumner alternatively argues that, even if the photographs have some probative value, that value is substantially outweighed by the danger of unfair prejudice and misleading the jury into associating the non-pornographic images of clothed minors with the pornographic images of nude adults.

We review a district court's evidentiary rulings for an abuse of discretion, United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992), and will not disturb such rulings unless "the district court has made a clear error of judgment, or has applied the wrong legal standard," United States v. Nelson, 712 F.3d 498, 512 (11th Cir. 2013).  Relevance under the Federal Rules of Evidence is a low standard, requiring only that the evidence in question have "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added); see United States v. Tinoco, 304 F.3d 1008, 1120 (11th Cir. 2002).  Relevant evidence is admissible unless a specific exclusionary rule applies. Fed. R. Evid. 402.  Sumner relies on one such rule of exclusion, Federal Rule of Evidence 403, which permits a district court to exclude otherwise relevant evidence if "its probative value is substantially

outweighed" by certain considerations, including the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Fed. R. Evid. 403.

Rule 403, however, constitutes "an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility."  United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011).  The reason for such caution is that relevant evidence in criminal trials is "inherently prejudicial" and, as a result, Rule 403 "permits exclusion only when unfair prejudice substantially outweighs probative value."  United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008).  Rule 403 requires courts to view the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact, and we will find an abuse of discretion only in rare situations where the decision to admit evidence is unsupportable when the evidence is viewed in this light.  See Lopez, 649 F.3d at 1247; United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006).

There was no abuse of discretion in this case.  The suggestive photographs, whether of actual minors or adult women who appeared to be minors, are indicative of a sexual interest in young girls, which makes it more probable that Sumner was both predisposed and intended to entice the fictitious 14-year-old to engage in sexual activity.  See 18 U.S.C. § 2432(b) (prohibiting the persuasion, enticement, or inducement of a minor to engage in illicit sexual activity); United

8

States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010) (explaining that in order to convict a defendant under § 2422(b), the government must prove that the defendant intended to cause a minor's assent to engaging in sexual activity and took a substantial step toward causing that assent). That the photographs may not have contained illegal content does not, as Sumner suggests, render them wholly irrelevant to the issues of intent and predisposition. The Federal Rules of Evidence clearly contemplate that evidence of uncharged conduct, even if perfectly legal, may be relevant to proving a material fact in a criminal case. See Fed. R. Evid. 404(b) (providing for the admission of evidence of "a crime, wrong, or other act" for the purpose of demonstrating, among other things, motive and intent); United States v. Kapordelis, 569 F.3d 1291, 1313 (11th Cir. 2009) (explaining that evidence of other acts, lawful or not, is admissible if "the other act is probative of a material issue other than the defendant's character"). And the simple fact that Sumner possessed and retained the photographs is relevant to his intent and predisposition, even without proof or argument that he obtained or viewed the images before he first made contact with the undercover officers.

Sumner's argument to the contrary relies on the Supreme Court's statement in United States v. Jacobson, 503 U.S. 540, 548–49, 112 S.Ct. 1535, 1540 (1992), that, once government inducement is shown, "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior

9

to first being approached by Government agents." Jacobson, however, says nothing about the relevance or admissibility of evidence absent proof that a defendant obtained or viewed that evidence before being approached by government officials. As we have explained, Jacobson merely requires proof that a defendant was "predisposed to commit the underlying crime absent the government's role in assisting such commission," not evidence of predisposition prior to the government's investigation. United States v. Aibejeris, 28 F.3d 97, 99 (11th Cir. 1994). In any event, given that less than a full day transpired between the time Sumner responded to the Craigslist ads and travelled to the undercover residence in Florida, it can be reasonably inferred that he obtained at least some of the photographs before he made first contact with the undercover officers.

The probative value of the photographs in establishing Sumner's criminal intent and predisposition is also not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. Unfair prejudice, as applied to criminal defendants, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997). The district court instructed the jury that Sumner was not on trial for possessing the 85 sexually suggestive photographs and that they were admitted for the sole purpose of proving his intent to commit the

10

charged offenses.  The photographs are certainly relevant to showing Sumner's preexisting inclination and intent to entice a minor to engage in sexual activity, and the court's instruction to the jury mitigated any risk of unfair prejudice or confusion posed by the photographs.

There is also no merit to Sumner's contention that "the photographs were likely to mislead the jury into associating the non-pornographic photographs of minors with the pornographic photographs of adults."  All of the images, whether of young adults who appeared to be minors or of actual minors, were indicative of Sumner's sexual interest in young females and, thus, probative on the issues of his intent and predisposition to entice a minor to engage in sexual activity.  The commingling of, in Sumner's words, "non-pornographic photographs of minors" and "pornographic photographs of adults" has little or no tendency to mislead the jury on any issue of relevance, particularly in light of the district court's limiting instruction on the appropriate consideration of those images.  Accordingly, we affirm the district court's decision to admit the challenged photographs over Sumner's objections on grounds of relevance and undue prejudice.

## III.

Sumner next contends that the evidence was not sufficient to allow the jury to conclude beyond a reasonable doubt that he was predisposed to commit the charged offenses before making contact with the undercover officers and, as such,

11

was not entrapped. He asserts that, aside from the 85 sexually suggestive photographs of young females which (in his view) should have been excluded, the government presented no evidence to show that he would have acted in the same way before his interaction with the government agents, including evidence regarding any websites he may have visited or e-mails he may have sent that were indicative of a preexisting disposition to seduce children. Even with the challenged photographs, Sumner maintains that the government did not "provide enough insight into [his] predisposition for a reasonable juror to eliminate the very reasonable doubt that [he] was not predisposed" to commit the charged offenses.

Entrapment is an affirmative defense comprised of two elements: (1) government inducement of the crime and (2) the defendant's lack of predisposition to commit the crime before the inducement. United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007). The defendant bears the initial burden of producing sufficient evidence of government inducement, at which point the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. Id. Where, as here, the jury has rejected an entrapment defense and government inducement is not at issue, "our review is limited to deciding whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." United States v. Brown, 43 F.3d 618, 622 (11th Cir. 1995). A jury verdict cannot

12

be overturned "if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt." Id.

The evidence presented at Sumner's trial was sufficient for the jury to conclude beyond a reasonable doubt that he was predisposed to commit the charged offenses before first making contact with the undercover officers.  In addition to the properly admitted photographs, which were indicative of a sexual interest in young girls, the evidence showed that Sumner promptly responded to two separate Craigslist ads concerning sex with minors, engaged in overtly sexual conversations with a fictitious 14-year-old girl and the apparent mother of another 14-year-old girl, drove across state lines later that same night for the purpose of engaging in sexual activity with one of those minors, and arrived at the meeting location with a trove of sexual paraphernalia in his truck.  Sumner's ready commission of the charged crimes and failure to back out of the arranged meeting at any time during his trip from Georgia to Florida amply demonstrated his predisposition.  See Brown, 43 F.3d at 625 (explaining that "[p]redisposition may be demonstrated simply by a defendant's ready commission of the charged crime" or "by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so").

In support of his contention that the evidence was insufficient to establish his predisposition, Sumner relies heavily on the Supreme Court's decision in

<u>Jacobson</u>.  There, the Supreme Court held that a defendant's purchase of two magazines containing photographs of nude minors, before Congress made such purchases illegal, was insufficient to demonstrate that he was predisposed to violate the new law where he was "the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations" before he ordered child pornography.  <u>Jacobson</u>, 503 U.S. at 550, 112 S.Ct. at 1541.  The Court concluded that the defendant's response to the government's solicitations was not enough to establish that he was predisposed to commit the charged offense because it "came only after the Government had devoted 2 ½ years to convincing him" to violate the law, and the government's evidence indicated nothing more than a general inclination to view materials that were legal at the time.  <u>Id.</u> at 550–51, 112 S.Ct. at 1541–43.  The Court distinguished the circumstances of that case from those of a "typical case," or even "a more elaborate 'sting' operation," where a defendant is "simply provided with the opportunity to commit a crime" and "the ready commission of the criminal act amply demonstrates the defendant's predisposition."  <u>Id.</u>  at 550, 112 S.Ct. at 1541.  "Had the agents in this case," the Court explained, "simply offered petitioner the opportunity to order child pornography through the mails, and petitioner — who must be presumed to know the law — had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense" would have succeeded.  <u>Id.</u>

14

The circumstances of this case are far closer to the "typical case," or even the more "elaborate 'sting' operation," identified in Jacobson than to the egregious facts of that case.  Unlike the defendant in Jacobson, who had been directly targeted by government agents for a period of over two years before he violated the law, Sumner readily committed the charged crimes after seeking out and viewing the two Craigslist ads posted by the undercover officers.  Because the government agents in this case "simply provided [Sumner] with the opportunity to commit a crime" by posting the Craigslist ads, his "ready commission of the criminal act amply demonstrated [his] predisposition."  See Jacobson, 503 U.S. at 550, 112 S.Ct. at 1541.

### III.

Finally, Sumner contends that the district court's jury instructions on entrapment misstated the law as set forth in Jacobson.  Sumner argues that whereas Jacobson requires that predisposition be shown before first contact with any government agent, the district court's instructions told the jury that it could reject his entrapment defense based on a mere finding that he was predisposed to commit the charged offenses "before the officer posted the advertisement on Craigslist."  Sumner notes that the undercover officers testified that they had participated in similar sting operations in the past and, based on that testimony, asserts that the

15

instructions failed to inform the jury that it should consider the possibility that he had encountered similar online postings before the events at issue in his case.[2]

Because Sumner did not object to the jury instructions in the district court, our review is limited to plain error. United States v. Felts, 579 F.3d 1341, 1343 (11th Cir. 2009). To establish plain error, Sumner must show (1) an error, (2) that is plain, (3) that affected his substantial rights, and (4) that seriously undermined the fairness, integrity, or public reputation of the judicial proceedings. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). "A reversal based on plain error requires that the challenged instruction be a plainly incorrect statement of the law and . . . that it was probably responsible for an incorrect verdict, leading to substantial injustice." United States v. Prather, 205 F.3d 1265, 1271 (11th Cir. 2000) (quotation marks omitted).

The district court's entrapment instruction did not misstate the applicable law, let alone constitute a plainly incorrect statement of that law. There was no evidence, argument, or suggestion at trial that Sumner had been exposed to any law enforcement contacts before he saw and responded to the Craigslist ads posted by Gereg and Hoffman. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233,

---

[2] Sumner also challenges the district court's jury instruction concerning the 85 sexually suggestive photographs, but only on the ground that those photographs should not have been admitted in the first place. As we have explained, the district court did not abuse its discretion in admitting the photographs and Sumner does not contend that the relevant jury instruction was itself improper.

16

1283 (11th Cir. 2008) (explaining that a jury instruction must be examined "as part of the entire charge, in view of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues") (quotation marks omitted).  Viewed in light of the evidence and arguments presented at trial, the district court's statement that Sumner's predisposition must have existed "before the officer posted the advertisement on Craigslist" is consistent with the governing principle that predisposition must be shown before a defendant was "first [] approached by Government agents."  See Jacobson, 503 U.S. at 549, 112 S.Ct. at 1540.  Furthermore, even if the district court had instructed the jury, as Sumner urges, that his predisposition must have existed before contact with "any government agent related to this web of sting operations," there is little or no likelihood that the change would have affected the verdict because there was nothing to suggest that he had any contact with government agents before viewing Gereg's and Hoffman's ads.  See United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (noting that to establish that an alleged error affected substantial rights, a defendant must show that there is a "reasonable probability of a different result" absent that error).  Sumner has thus failed to demonstrate that the entrapment instruction was plainly erroneous or that it otherwise affected his substantial rights.

**AFFIRMED.**

17