**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 22, 2014**

# In the Court of Appeals of Georgia

A14A0557. FLADING v. THE STATE.

McMILLIAN, Judge.

John Flading was convicted by a jury of one count of driving under the influence of alcohol (less safe) and one count of failure to maintain lane. Flading appeals, arguing that the trial court erred in admitting evidence of a stipulation reached at an administrative civil hearing. Finding no error, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that on July 11, 2009, Officer Joshua Ott of the Roswell police department observed a black Lincoln Mark LT turn right onto Canton Street. He noted that the vehicle crossed halfway across the double yellow line before drifting back to the right and crossing the white line. While following the vehicle, Officer Ott observed several

---

[1] See, e.g., *Goolsby v. State*, 299 Ga. App. 330, 330 (682 SE2d 671) (2009).

other instances of slow weaving before he activated his emergency lights and made a traffic stop. When Officer Ott approached the vehicle to speak with Flading, the driver of the vehicle, he immediately detected a "moderate" odor of alcohol emanating from inside the vehicle. He also observed that Flading's eyes were "glassy and droopy." Flading admitted that he had consumed two or three beers that evening.

Officer Ott then asked Flading to step to the rear of his vehicle to perform a field sobriety evaluation. At that time, the officer was able to confirm that the odor of alcohol was coming directly from Flading. Officer Ott, who testified at trial regarding his extensive DUI training, first performed the horizontal gaze nystagmus evaluation, and Flading exhibited four out of six clues, indicating that he was driving while under the influence of alcohol and was less safe in doing so. Because Flading told him that he had broken his ribs two weeks ago and he could not say whether it would affect his ability to walk a straight line or stand on one foot, Officer Ott elected to forego those additional field sobriety tests. He then asked Flading to recite the alphabet from the letter E to R. Flading started at E, but continued all the way to T before pausing for several seconds and then stating "R." And finally, the officer performed a preliminary breath test which registered positive for the presence of alcohol.

Based upon his driving, physical manifestations, and the field sobriety evaluations, Officer Ott placed Flading under arrest for driving under the influence of alcohol. He then read to Flading from his copy of the Georgia Implied Consent Notice card, which was admitted into evidence. Flading refused to consent to a state-administered chemical test of his breath. At trial, the State also admitted into evidence a copy of the officer's video that was recorded from the time he first observed Flading's vehicle until after he was arrested, which was played for the jury. The State also introduced, over objection, a document entitled "Final Decision" completed at an administrative license suspension hearing ("ALS hearing").[2] Officer Ott explained that he was present at the ALS hearing and spoke with Sarah Hoffman, an attorney who represented Flading at that time and agreed that, in exchange for pleading guilty to the DUI charge, Flading would be permitted to keep his license. The Final Decision, which was signed by Officer Ott and Hoffman, was read to the jury in part, including the following:

---

[2] In Georgia, a person arrested for driving under the influence of alcohol and who refuses to take the state-administered test under the implied consent law, such as Flading, has his driver's license suspended, subject to a hearing before an administrative law judge. See OCGA § 40-5-67.1 (d), (f), (g).

3

This withdrawal is based on an agreement between the arresting officer and [Flading]. In exchange for the arresting officer's withdrawal of this sworn report, [Flading] shall enter a plea of guilty to the underlying charge of violating O.C.G.A. § 40-6-391. The parties agree that a copy of this final decision may be admitted into any subsequent legal proceeding involving the charge as an admission by [Flading] of [Flading's] guilt or nolo contendere in exchange for the rescission of the administrative license suspension. The parties further agree that if [Flading] fails to enter the required plea, this order may be voided and the sworn report refiled with the [Department of Driver Services].

The evidence presented at trial was sufficient to authorize a rational trier of fact to find Flading guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

1. In his sole enumeration of error, Flading contends that the trial court erred by allowing the State to introduce the Final Decision from the ALS hearing into evidence at his criminal jury trial. Immediately prior to trial on February 5, 2013, Flading's trial counsel moved in limine to exclude the Final Decision. In explaining the nature of the stipulation to the trial court, Flading's counsel confirmed that Hoffman was an attorney Flading had hired to represent him at the ALS hearing and that she signed the Final Decision. Nonetheless, he moved to exclude the Final

4

Decision on various grounds, most of which he has abandoned on appeal. The trial court denied the motion, noting "[t]hat's cross-examination material."

> On appeal from a trial court's ruling on a motion to suppress or a motion in limine, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. While a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. Furthermore, even if the trial court's asserted ground for denying a motion to suppress or motion in limine is erroneous, we will affirm the ruling if it is right for any reason.

(Citations and punctuation omitted.) *Walker v. State*, 314 Ga. App. 67, 67 (1) (722 SE2d 887) (2012).

Flading first argues that Georgia courts have a long-standing prohibition against introducing evidence from an ALS hearing, citing several cases in support: *Wyatt v. State*, 179 Ga. App. 327 (346 SE2d 387) (1986); *Sheffield v. State*, 184 Ga. App. 141 (361 SE2d 28) (1987) (physical precedent only); *Hunter v. State*, 191 Ga. App. 769 (382 SE2d 679) (1989); and *Swain v. State*, 251 Ga. App. 110 (552 SE2d

5

880) (2001). However, we are not persuaded that the cases on which Flading relies are relevant to our inquiry here.

Most recently, in *Swain,* this Court noted that in *Wyatt*, *Sheffield*, and *Hunter*, the ALS hearings did not result in a decision on the merits. *Swain,* 251 Ga. App. at 113 (1).[3] Thus, *Swain* was the first instance in which this Court was squarely presented with the question of "whether preclusive effect should be given in a criminal DUI prosecution to administrative factfinding from a previous driver's license suspension hearing." Id. at 113. We held that there was no preclusive effect in that case and explained,

> The purpose of the driver's license suspension hearing is to provide a quick, informal procedure to remove dangerous drivers from Georgia's roadways and thereby protect public safety. Accordingly, the driver must request the hearing within ten days of receiving notice of the right to a hearing, and the Department of Public Safety must hold the hearing within thirty days of the request. The scope of the hearing is confined by statute to six discrete issues, and the hearing officer must issue a decision within five days of the hearing. If the hearing officer sustains

---

[3] In both *Wyatt* and *Sheffield*, the arresting officer's failure to appear at the ALS hearing resulted in the reinstatement of the appellant's license. *Wyatt*, 179 Ga. App. at 327 (1); *Sheffield,* 184 Ga. App. at 141 (1). In *Hunter*, the ALS hearing officer, with no explanation, submitted a letter to appellant that his license suspension was withdrawn. *Hunter*, 191 Ga. App. at 770.

the suspension, the driver has the right to seek judicial review of the decision, but there is no procedure for the State to appeal an adverse ruling. Within the framework of this abbreviated procedure, the State has only a limited opportunity to litigate the issues, some of which may prove pivotal in a subsequent DUI trial.

(Citations and punctuation omitted.) Id. at 113-114 ("To hold otherwise would frustrate the purpose of the summary suspension hearing."). See generally OCGA § 40-5-67.1 (g) (setting out procedures for license suspension hearing). Thus, while Flading is correct that this Court has thus far declined to allow the admission of the final decision of an administrative hearing officer after a contested hearing or if the hearing is dismissed for some other reason, he has pointed to no cases involving the issue of whether a stipulation reached at an ALS hearing can be introduced in a criminal trial.[4]

---

[4] To the extent Flading is arguing that the Final Decision is inadmissible because it is in the nature of an admission made with a view toward compromise under former OCGA § 24-3-37, we note that this former statute did not operate to exclude such statements in criminal cases. See, e.g., *Tolbert v. State*, 215 Ga. App. 113, 115 (2) (449 SE2d 671) (1994). We also take this opportunity to note that under our new Evidence Code, the exclusion of offers to compromise "shall not require exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness, negating a contention of undue delay or abuse of process, or proving an effort to obstruct a criminal investigation or prosecution." OCGA § 24-4-408 (c) (tracking Federal Rule of Evidence 408); see also *United States v. Levinson*, 504 Fed. Appx. 824, 828 (11th Cir. 2013) (Federal Rule of

We turn, therefore, to our general law regarding a party's admissions and stipulations in criminal proceedings. "Admissions by agents or attorneys are not admissible in criminal cases in the sense in which they are admissible in civil cases. They should not be treated as evidence against the accused unless shown to have been authorized by him." (Citations and punctuation omitted.) *Dryer v. State*, 205 Ga. App. 671, 672 (1), n. 1 (423 SE2d 297) (1992).

> Generally, a statement by defense counsel made in the presence of the defendant relating to the defendant's conduct is considered a statement by the defendant himself if the defendant does not repudiate counsel's authority to make the statement. The general rule as to stipulations is that once made in the course of judicial proceedings an estoppel results unless the complaining party can show fraud or mistake. Such an express stipulation should generally be made in writing or in open court.

(Citations and punctuation omitted.) *Dryer*, 205 Ga. App. at 672-673 (1) (defendant acquiesced to an oral stipulation of facts made in open court for the purpose of dispensing with proof of the agreed facts, amounting to a conclusively binding admission in judicio).

---

Evidence 408 and its exceptions apply to both criminal and civil proceedings).

Flading did not claim fraud or mistake in reaching the stipulation at the ALS hearing. Nor did he ever repudiate counsel's authority to make the stipulation. Although on appeal Flading vaguely asserts that "he did not enter into the purported agreement," he did not argue such to the trial court.[5] To the contrary, at the hearing on his motion in limine, Flading's trial counsel confirmed that Flading hired Hoffman to represent him at the ALS hearing and that she signed the document. At no point did Flading argue that he did not give Hoffman permission to enter into the stipulation. When presenting its argument in response, the State specifically invited Flading's counsel to correct the record if Hoffman was not actually representing him; Flading did not do so. Accordingly, Flading, having accepted the benefit of the stipulation in the form of the reinstatement of his license and having shown no fraud or mistake, acquiesced to his counsel's stipulation to plead guilty to the DUI and to the admissibility of the Final Decision in a subsequent legal proceedings related to the DUI charge. See *Muldrow v. State*, 322 Ga. App. 190, 195 (3) (744 SE2d 413) (2013).

---

[5] Flading stops short of arguing that he did not agree to enter into the stipulation. Rather, as he did at the hearing, Flading apparently attempts to make an issue of the fact that the stipulation was signed by Hoffman and does not contain his personal signature. That fact does not change the outcome here.

9

2. Flading next argues that the Final Decision is extremely suggestive and prejudicial and should have been excluded. Because the motion in limine hearing took place after January 1, 2013, Georgia's new Evidence Code applies.[6] See Ga. L. 2011, pp. 99, 214, § 101. Under our new code, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA 24-4-401 (mirroring Federal Rule of Evidence 401). This relevance standard "is a low standard." *United States v. Sumner*, 522 Fed. Appx. 806, 810 (11th Cir. 2013). Flading's stipulation that he would plead guilty to DUI in exchange for the return of his drivers' license is relevant to, though certainly not dispositive of, the charge that he was driving under the influence of alcohol.[7] See *United States v. Harrell*, No. 6:05-cr-17, 2006 U.S. Dist. LEXIS 26793,

---

[6] Because the new Evidence Code is patterned after the Federal Rules of Evidence, we will look to case law from federal courts within the Eleventh Circuit for guidance in interpreting these new statutes. See Ga. L. 2011, p. 99, § 1; *Jones v. State*, ___ Ga. App. ___ (Case No. A13A1940, decided March 28, 2014).

[7] See *Johnson v. State*, 205 Ga. App. 760, 761 (423 SE2d 702) (1992) (defendant's confession cannot establish the corpus delicti, which must be proved beyond a reasonable doubt, independently of the confession).

at *3 (M.D. Ga. May 5, 2006) (statements made by defendant at a warrant hearing relevant to issues in later criminal trial).

OCGA § 24-4-403, which tracks Federal Rule of Evidence 403, in turn provides that

> [r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Id. The Eleventh Circuit has described Rule 403 as 'an extraordinary remedy which the [courts] should invoke sparingly, and the balance should be struck in favor of admissibility.' *Sumner*, 522 Fed. Appx. at 810 (citing *United States v. Lopez*, 649 F3d 1222, 1247 (11th Cir. 2011)). "The reason for such caution is that relevant evidence in criminal trials is inherently prejudicial." (Citation and punctuation omitted.) Id. The Eleventh Circuit has further explained that "[t]he major function of Rule 403 is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *United States v. Aguila-Urbay*, 480 Fed. Appx. 564, 567 (11th Cir. 2012). We find that the Final Decision at issue in this case is neither of "scant or cumulative probative force"

11

nor introduced by the State merely for the sake of its prejudicial effect.[8] Accordingly, because its probative value is not substantially outweighed by its prejudicial effect, the trial court properly allowed admission of the Final Decision over objection. See id.

3. Lastly, Flading argues, without citation to authority, that there was no indicia of reliable evidence to establish that Hoffman was "actually an attorney" acting with Flading's authority. This argument is completely unsupported by the record. As we have already noted, during the motion in limine hearing, Flading's trial counsel conceded that Hoffman was Flading's attorney at the ALS hearing and signed the Final Decision. Moreover, at trial, Officer Ott testified that at the ALS hearing, he personally spoke with Hoffman who was representing Flading at that time. Officer

---

[8] Flading does not argue that the Final Decision is inadmissible on hearsay grounds, but we note that under our new rules of evidence, the admission of a statement against interest made by a declarant who is unavailable as a witness (including a criminal defendant who elects not to testify) is now controlled by OCGA § 24-8-804 (b) (3) and includes statements that would tend "to expose the declarant to civil or criminal liability." OCGA § 24-8-804 (b) (3) (A) (patterned after Federal Rule of Evidence 804); see also *United States v. Hendrieth*, 922 F2d 748, 750 (11th Cir. 1991) (asserting fifth amendment privilege renders witness unavailable to testify). Such statements must be "[s]upported by corroborating circumstances that clearly indicate the trustworthiness of the statement if it is offered in a criminal case as a statement that tends to expose the declarant to criminal liability." OCGA § 24-8-804 (b) (3) (B); see also *United States v. Daniels*, 465 Fed. Appx. 896, 898-899 (11th Cir. 2012).

Ott also confirmed that Hoffman signed the Final Decision and that she conferred with Flading prior to agreeing to the stipulation and that "[h]e agreed to plead guilty to DUI." In addition, Officer Ott explained that he was familiar with Hoffman prior to the ALS hearing at issue because they had worked together on previous cases.

Thus, to the extent the State was required to present any further indicia of reliability beyond Flading's concession that Hoffman was his attorney representing him at the ALS hearing, we find that it has done so here. Although Flading conducted a thorough cross-examination of Officer Ott regarding various reasons why the Final Decision may have been filed with the Department of Driver Services "that have nothing to do with Mr. Flading's actual decision to plead guilty," "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citation and punctuation omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009). Accordingly, the trial court did not err in admitting the Final Decision. See *Martin v. State*, 251 Ga. App. 149, 149-150 (1) (553 SE2d 827) (2001); *Kendrick v. State*, 240 Ga. App. 530 (523 SE2d 414) (1999).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur*.