**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

May 15, 2024

# In the Court of Appeals of Georgia

A24A0523. CABRERA-ZAMARRIPA v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Stewart Alonzo Cabrera-Zamarripa ("Cabrera") was convicted of armed robbery, possession of a firearm during the commission of a felony, and other offenses arising out of the theft of a pair of limited edition sneakers. Arguing that he is entitled to new trial, Cabrera contends that the trial court erred by admitting into evidence a stipulation without first determining that he knowingly and voluntarily waived his constitutional rights as to the stipulated facts and evidence. Cabrera further maintains that the trial court gave erroneous jury instructions on the law of factual stipulations and on possession of a firearm during the commission of a felony. For the reasons discussed below, we affirm.

Construed in the light most favorable to the verdict,[1] the evidence showed that Gustavo Campa, a high school student, sold pairs of limited edition sneakers, and he arranged through a social media app to sell a pair of Yeezy 350 Breds to a buyer later identified as Cabrera. On the afternoon of July 13, 2019, Campa had his friend, Myles Moon, drive him to a Kroger parking lot in Gwinnett County to finalize the sale. Campa's friend Diandre Garrett rode with them. After they arrived at the parking lot, they saw Cabrera in a parked car with his friend, Jose "Ivan" Guevara. Because it was raining, Campa invited Cabrera into Moon's car to discuss the sale, and both Cabrera and Guevara got into the backseat. During the ensuing discussion over the shoes, Moon sat in the driver's seat, Campa in the front passenger seat, Garrett in the right rear passenger seat, Guevara in the center rear passenger seat, and Cabrera in the left rear passenger seat.

As the discussion continued, Campa handed the shoes to Cabrera so that he could inspect them. Cabrera, however, put the shoes in his book bag, announced that he was taking them, and pulled out a handgun. Cabrera pointed the handgun at Campa and Garrett. As Cabrera exited from the car with the shoes, Garrett reached for the

---

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

handgun, and Cabrera fired two shots into the car. One of the shots wounded Garrett, and the other wounded Guevara. Cabrera and Guevara ran off, got into their car, and fled from the parking lot.

Immediately after the shooting, Moon drove Campa and Garrett to Gwinnett Medical Center, where Garrett was treated for his gunshot wounds. The three of them subsequently were interviewed by the police at the hospital. Garrett showed an officer photographs of Cabrera on social media and later identified him in a photographic lineup as the shooter. Moon also was shown a photographic lineup and identified Cabrera as the shooter. Additionally, Moon consented to the search of his car, and a crime scene investigator discovered a bullet projectile lodged in the back of the front passenger seat and a shell casing ejected from a .40 caliber firearm on the left rear passenger seat. Blood was visible in the rear passenger compartment of the car and on the rear passenger doors.

The police obtained a search warrant for Cabrera's residence. During the search, the police found a .40 caliber pistol and a handgun laser site in Cabrera's bedroom, but further testing indicated that the handgun was not the one used in the

shooting. Among other items, the police found a book bag and a collection of shoes and shoe boxes, but not the shoes taken from Campa.

Additionally, as part of their investigation, the police obtained copies of Kroger's security camera videos. One video showed two cars located in the area of the shooting incident and a person running in a white shirt, but the camera was too far away too confirm the makes or the models of the cars or the identity of the person running.

Shortly after the shooting, the police also interviewed Cabrera's friend, Guevara, who sought treatment at a different hospital. Guevara initially told the police that he had been shot at a county park after he went there to purchase some shoes from someone. Guevara later conceded to an investigator that the shooting occurred at the Kroger during a shoe deal, but he claimed that the driver of the other car was the one who fired a gun.

Cabrera was arrested and indicted on charges of armed robbery, aggravated assault (two counts), theft by taking, and possession of a firearm during the commission of a felony (armed robbery). At trial, Campa and Garrett testified about the shoe deal as described above and identified Cabrera as the shooter. The recorded

4

police interviews of Campa, Garrett, and Moon in which they described the shooting incident also were introduced into evidence and played for the jury. In addition to the responding officers and investigators involved in the case, the State called the crime scene investigator who photographed and processed the evidence relating to Moon's car, and she opined that the locations of the bullet casing and projectile were consistent with someone firing the gun while sitting in or exiting from the left rear passenger seat.

The State also called Guevara as a witness. Guevara testified about the shoe deal, but he maintained that he did not see Cabrera with a gun, that he blacked out when he got shot, and that he did not know who shot him. According to Guevara, he remembered hearing gunshots but could no longer recall seeing anyone with a gun in the car that day.

Additionally, a written list of stipulations signed by the prosecutor and Cabrera's counsel was admitted into evidence and read into the record. The stipulations pertained to the search of Cabrera's residence and the items found there; the security camera video obtained from Kroger; the audio and video recordings of the

police interviews of Moon, Campa, Garrett, and Guevara; an investigator's report about the case; and the photographic lineups shown to Garrett and Moon.

After the State rested, the defense called a firearm ballistics expert, who disagreed with the crime scene investigator's assessment of the trajectory of the gunfire based on the location of the projectile and shell casing found in Moon's car. Cabrera elected not to testify.

The jury returned a verdict of guilty on all counts. Cabrera subsequently filed a motion for new trial, as amended, which the trial court denied, except with respect to a sentencing issue. Cabrera filed a notice of appeal from that order, but this Court dismissed the appeal because Cabrera had not yet been resentenced. After the trial court resentenced Cabrera,[2] his appeal was retransmitted to this Court and is now properly before us for review.

---

[2] In Cabrera's original sentence, the trial court merged one count of aggravated assault and the theft by taking count into the armed robbery count. In the resentencing order, the trial court determined that the second aggravated assault count also should be merged into the armed robbery count. On the armed robbery count and the possession of a firearm during the commission of a felony count, Cabrera was sentenced to a total of 25 years, with the first 15 years to be served in confinement and the remainder to be served on probation.

1. Cabrera contends that the trial court erred by admitting into evidence the written list of stipulations signed by the prosecutor and defense counsel. According to Cabrera, by stipulating to certain facts and to the admission of certain evidence, he waived his fundamental constitutional rights to trial by jury, to proof of guilt beyond a reasonable doubt, to confront witnesses, and to due process as to those stipulations. Cabrera maintains that the trial court should have obtained his express, personal waiver of those constitutional rights with respect to the stipulations before their admission at trial.

Cabrera's argument is unpersuasive. We have previously rejected the argument that a trial court must question a defendant as to whether he agrees to a stipulation authorized by his counsel or obtain a personal waiver from a defendant of his constitutional rights before admitting a stipulation at trial. See *Muldrow v. State*, 322 Ga. App. 190, 194-195 (3) (744 SE2d 413) (2013); *Littlejohn v. State*, 320 Ga. App. 197, 204-205 (3) (739 SE2d 682) (2013); *Martin v. State*, 251 Ga. App. 149, 149-150 (1) (553 SE2d 827) (2001). Rather, a stipulation made by defense counsel and presented to the jury in the defendant's presence is sufficient to bind the defendant and show his authorization. See *Muldrow*, 322 Ga. App. at 195 (3).

> Generally, a statement by defense counsel made in the presence of the defendant relating to the defendant's conduct is considered a statement by the defendant himself if the defendant does not repudiate counsel's authority to make the statement. The general rule as to stipulations is that once made in the course of judicial proceedings an estoppel results unless the complaining party can show fraud or mistake. Such an express stipulation should generally be made in writing or in open court.

(Citation and punctuation omitted.) *Flading v. State*, 327 Ga. App. 346, 350 (1) (759 SE2d 67) (2014).

The written list of stipulations was agreed to by Cabrera's counsel, admitted into evidence, and read to the jury in Cabrera's presence without objection. And Cabrera does not claim fraud or mistake in reaching the stipulations. Under these circumstances, Cabrera "acquiesced in the stipulations, and the stipulations were binding upon him." *Littlejohn*, 320 Ga. App. at 205 (3). See *Flading*, 327 Ga. App. at 350-351 (1); *Muldrow*, 322 Ga. App. at 195 (3). We therefore discern no error by the trial court in the admission of the stipulations.[3]

---

[3] The stipulations in the present case did not include any stipulations to a material element of an offense, such as intent. Our opinion thus does not address stipulations that could be construed as in the nature of a plea of guilt.

2. Cabrera also contends that the trial court gave an erroneous jury instruction on the law of factual stipulations. The trial court instructed the jury:

> It is your responsibility to determine the facts of this case from all of the evidence presented. Then you must apply the law I give you in this charge to the facts as [you] find them to be.

> Your oath requires that you will decide this case based on the evidence. Evidence is the means by which any fact that is put in issue is established or disproved. Evidence includes all of the testimony of the witnesses and any exhibits admitted during the trial and stipulations of the attorneys; that is, any facts to which the attorneys have agreed with approval by the Court. Evidence does not include the indictment, the plea of not guilty, opening or closing remarks of the attorneys, or questions asked by the attorneys.

> The parties have entered into stipulations that have been approved by the Court about facts, testimony, documents, and exhibits. The specific stipulations of the parties, with all of the details, have been previously read to you and admitted into evidence for your consideration as State's Exhibit 7.

> *Where parties stipulate facts, that is in the nature of evidence, and you must take that fact or those facts as a given without the necessity of further proof. You make all decisions based on the evidence in this case.*

> Where parties stipulate testimony, documents, and exhibits, this is also in the nature of evidence. You may take that testimony as if it were given in court, and you may rely on it if you find it credible. However, either party may dispute such testimony by other evidence. Again, you make all decisions based on the evidence in this case.

(Emphasis supplied.) According to Cabrera, the italicized portion of the instruction was improper because it prohibited the jury from finding a fact inconsistent with any factual stipulation.

Because Cabrera did not object to the jury instruction when it was given, we review the instruction only for plain error. OCGA § 17-8-58 (b); *Grullon v. State*, 313 Ga. 40, 44-45 (2) (867 SE2d 95) (2021).

> The four prongs of the plain error analysis are set out in *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011), as follows: First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously

affects the fairness, integrity or public reputation of judicial proceedings. The Court need not analyze all of the elements of the plain error test when the appellant fails to establish one of them.

(Citations, punctuation, and emphasis omitted.) *Simmons v. State*, 314 Ga. 883, 889 (2) (880 SE2d 125) (2022).

Applying this test, we conclude that Cabrera has failed to establish plain error because he has not shown that the trial court's instruction on factual stipulations constituted legal error that was clear or obvious. The italicized language challenged by Cabrera came directly from Georgia's pattern jury instructions in effect at the time of trial, and Cabrera has not pointed to any controlling authority that the pattern instruction is improper. See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.30.12. Moreover, it is well-established that a factual stipulation "obviate[s] the need for proof," *Jenkins v. State*, 313 Ga. 81, 87 (2) (868 SE2d 205) (2022) (citation and punctuation omitted), and it results in an estoppel and "amount[s] to a conclusively binding admission in judicio." (Citations and punctuation omitted.) *Flading*, 327 Ga. App. at 350 (1). Accordingly, Cabrera has not shown that the trial court's giving of the charge on factual stipulations was clearly or obviously erroneous, and he thus cannot satisfy the second prong of the plain error

11

test. See *DeMuro v. State*, 317 Ga. 155, 168 (3) (892 SE2d 31) (2023) ("[T]he [jury] instructions were not erroneous in view of the unequivocally clear words of a statute or court rule or in view of controlling precedent. In the absence of controlling authority establishing that any error in the jury instructions at issue was obvious beyond reasonable dispute, the appellant could not meet the second prong of the plain-error test."); *Simmons*, 314 Ga. at 889-890 (2) (a) (holding that defendant failed to show clear and obvious error in jury instruction, where the instruction appeared in Georgia's pattern jury instructions, and the defendant did not point to any authority showing that the pattern instruction was deficient); *Williams v. State*, 304 Ga. 455, 458-459 (3) (818 SE2d 653) (2018) (concluding that defendant failed to show that giving of jury instruction that was "substantially identical to the suggested pattern jury instruction" constituted clear and obvious error); *Williams v. State*, 297 Ga. 460, 465 (3) (773 SE2d 213) (2015) (holding that defendant failed to show that giving of jury instruction drawn from Georgia's pattern jury instructions were clear and obvious error). See also *Muse v. State*, 316 Ga. 639, 667 (9) (b) (889 SE2d 885) (2023) ("As to the second part of the plain error test, an error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point

12

or if a defendant's theory requires the extension of precedent.") (citation and punctuation omitted).

3. Lastly, Cabrera argues that the trial court gave an erroneous jury instruction on possession of a firearm during the commission of a felony. That offense is defined in OCGA § 16-11-106, which provides in relevant part that "[a]ny person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony[.]" OCGA § 16-11-106 (b) (1). Here, as part of its jury instruction on the firearm possession offense, the trial court instructed the jury that "armed robbery, as alleged in this indictment, is a crime against or involving the person of another and is a felony offense." According to Cabrera, whether the predicate felony offense "involv[es] the person of another" is an essential element of the firearm possession offense and is a fact-specific question that must be decided by the jury in cases where the predicate offense is armed robbery, such that the trial court's instruction, which removed that question from the jury's consideration, was erroneous.

While Cabrera objected to the jury instruction during the charge conference, he did not object to the instruction at the time that it was given. Our review is therefore limited to determining whether plain error occurred. OCGA § 17-8-58 (b); *Grullon*, 313 Ga. at 44-45 (2). And, as previously noted, plain error requires a showing that the jury instruction constituted legal error that was clear or obvious. See *Simmons*, 314 Ga. at 889 (2). No such showing has been made here.

Cabrera has not pointed to any controlling precedent addressing the specific issue presented here. However, in *Tucker v. State*, 362 Ga. App. 489, 505-506 (7) (869 SE2d 142) (2022), we addressed the meaning of the phrase "crime . . . involving the person of another" in the firearm possession statute, where the predicate felony offense was conspiracy to commit armed robbery. We concluded that the offense of "conspiracy to commit an armed robbery *necessarily* 'involv[es] the person of another' in two ways, insofar as it requires at least one co-conspirator and at least one victim." (Emphasis supplied.) Id. at 505 (7).

What we concluded was true for the crime of conspiracy to commit armed robbery is also true for the crime of armed robbery itself. Armed robbery necessarily "involv[es] the person of another" because every armed robbery requires at least one

14

other person as part of its commission. See OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]"); *Dowdell v. State*, 278 Ga. App. 142, 144 (1) (628 SE2d 226) (2006) (explaining that "armed robbery is . . . theft from a person" and is a "crime against or involving the person of another" under the statute for possession of a firearm during the commission of a felony). Because armed robbery is per se a crime involving another person, the jury need not make a finding on that issue; the trial court therefore did not plainly err by instructing the jury that the crime of armed robbery is a "crime . . . involving the person of another" for purposes of the statute prohibiting possession of a firearm during the commission of a felony. Accord *State v. Nejad*, 286 Ga. 695, 700 (2) (690 SE2d 846) (2010) ("A firearm pointed at a victim and reasonably appearing to the assault victim to be loaded is a deadly weapon as a matter of law, regardless of whether it is loaded and, under such a circumstance, the trial court does not err when it takes the issue of 'deadliness' from the jury [in its jury charge on aggravated assault with a deadly weapon]."); *Shivers v. State*, 286 Ga. 422, 430 (3) (688 SE2d 622) (2010) (Nahmias, J., concurring specially) (explaining that "in

deciding whether different items constitute a 'deadly weapon' for purposes of the statute prohibiting aggravated assault by use of a deadly weapon," the Supreme Court of Georgia has "decided that certain items – such as firearms, whether loaded or unloaded – always qualify as deadly weapons" and that "because they are per se within the scope of the statute, the jury need not make that finding"); *Trigger v. State*, 275 Ga. 512, 515 (4) (570 SE2d 323) (2002) (concluding that the trial court committed no error when, in charging "the jury on the possession of a firearm by a convicted felon, the trial court charged the jury that the offense of possession of cocaine with the intent to distribute, which was the prior felony on which the possession of a firearm charge was based, was a felony"), overruled in part on other grounds by *Wilson v. State*, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*