FINAL COPY
295 Ga. 399

S14A0433.  LILLY et al. v. HEARD.

HUNSTEIN, Justice.

Appellants Nettie Lilly and Janet Anderson filed a complaint against appellee Sharon Heard, seeking a writ of quo warranto to remove her from the Baker County Board of Education.  Heard moved to dismiss the complaint on various grounds, and the trial court granted the motion.  Appellants now appeal from that order.  For the reasons that follow, we affirm.

1.  On November 6, 2012, Heard was elected to the Baker County Board of Education.  In July 2013, Appellants filed this action, contending that Heard had been a registered voter in Thomas County from June 2007 until April 30, 2012, when she registered to vote in Baker County, and that she therefore could not meet the residency requirements to be a member of the Baker County Board of Education.  See OCGA § 45-2-1 (1) ("The residency requirement for a candidate for any county office . . . shall be 12 months residency within the county"); Ga. Const. of 1983, Art. VIII, Sec. V, Par. II (providing that local "[s]chool board members shall reside within the territory embraced by the

school system and shall have such compensation and additional qualifications as may be provided by law"). To their complaint, Appellants attached Heard's voter registration card from Thomas County, dated June 28, 2007, and documents from the Georgia Secretary of State showing that Heard registered to vote in Baker County on April 30, 2012, and first voted in Baker County on July 31, 2012. Appellants subsequently amended the paragraph of their complaint that alleged that, because Heard was a resident of Thomas County and not Baker County, she did not meet the one-year residency requirement, to allege that Heard "remains unqualified to serve on the Baker County Board of Education as [Heard] does not reside in the District that she represents." See OCGA § 20-2-51 (a) ("No person shall be eligible for election as a member of a local board of education who is not a resident of the school district in which that person seeks election and of the election district which such person seeks to represent.").

Heard filed a motion to dismiss the complaint, contending that a qualified voter in Baker County, Mendell Cowart, had brought a pre-election challenge to her candidacy, see OCGA § 21-2-6, contending that she was ineligible to run for the local board of education because she had not resided in Baker County for

12 months preceding the election; that the Baker County Board of Elections had resolved that challenge in Heard's favor; and that the doctrines of res judicata and collateral estoppel barred Appellants' action. Heard also moved to dismiss the complaint based on the doctrine of laches and on the ground that the case was moot since Heard took office before Appellants filed their action.

At the hearing on Heard's motion to dismiss, Heard introduced the minutes of the June 18, 2012 hearing held by the Baker County Board of Elections on Cowart's pre-election complaint that Heard was not qualified to run for the school board at the November 6, 2012 election. See OCGA § 21-2-6 (b) (saying that "any elector who is eligible to vote" for a candidate for county office may file a pre-election "challenge [to] the qualifications of the candidate by filing a written complaint with the superintendent giving the reasons why the elector believes the candidate is not qualified to seek and hold the public office for which the candidate is offering"); OCGA § 21-2-2 (35) (saying that "'[s]uperintendent' means: (A) Either the judge of the probate court of a county or the county board of elections . . . ."); OCGA § 21-2-40 (a) (authorizing the General Assembly to create "by local Act . . . a board of elections in any county of this state and empower the board with the powers and duties of the election

3

superintendent"). Those minutes reflect that Cowart, in support of her position that Heard was not a resident of Baker County for one year preceding the November 6, 2012 election, put in evidence that Heard was not on the September 18, 2011 and February 12, 2012 voter lists for Baker County.

In rebuttal, Heard said that she had been living in Baker County since early 2011 and had registered to vote in Baker County in April 2012. She also offered letters from 14 people, some saying that Heard had been living in Baker County for over a year and others saying that she had been living there since 2011, and a light bill from June 2012 that showed Heard's address as Dias Road, Newton, Georgia, which is located in Baker County. Heard's aunt told the election board that Heard had lived in Baker County since 2011, and several other people told the board that she had lived there for over a year.

On June 21, 2012, the election board issued a written ruling, finding that Heard "was a resident of Baker County for 12 months prior to the election as required by OCGA § 45-2-1 and is qualified to offer as a candidate for said office." Although Cowart had a right to appeal the board's decision to superior court, she did not do so. See OCGA § 21-2-6 (e).

On October 24, 2013, the trial court issued an order dismissing

4

Appellants' complaint. It ruled that Appellants' action was barred by the doctrines of mootness, laches, res judicata, and collateral estoppel.

2. Appellants contend that the trial court erred in dismissing their complaint based on the doctrine of res judicata. We conclude that the trial court did not err.

> The doctrine of res judicata provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. Res judicata thus "prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action."

Odom v. Odom, 291 Ga. 811, 812 (1) (733 SE2d 741) (2012).

(a) We first address whether the Baker County Board of Elections constitutes a "court of competent jurisdiction" for purposes of res judicata.

"Georgia courts have repeatedly held that questions of fact ruled upon by an administrative body are thereafter precluded from relitigation in civil suits by the doctrines of res judicata and collateral estoppel." Malloy v. State, 293 Ga. 350, 354-355 (2) (a) (744 SE2d 778) (2013). In doing so, however, our appellate courts have rarely addressed how to decide whether a determination

5

by an administrative agency or board should be accorded the same effect under the rules of res judicata as a judgment of a court. In <u>Ga. Cas. & Surety Co. v. Randall</u>, 162 Ga. App. 532 (292 SE2d 118) (1982), overruled on other grounds, <u>Bahadori v. Nat. Union Fire Ins. Co.</u>, 270 Ga. 203 (1) (507 SE2d 467) (1998), the Court of Appeals addressed the issue, holding that because the Workers' Compensation Act authorized the Board of Workers' Compensation to determine the issue in dispute in that case, the board was acting as a court of competent jurisdiction for purposes of res judicata. Id. at 533-534. And the United States Supreme Court has spoken on the requirements for an administrative adjudication to have preclusive effect.

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.

<u>Astoria Fed. Sav. & Loan Assn. v. Solimino</u>, 501 U. S. 104, 107-108 (111 SCt 2166, 115 LE2d 96) (1991) (citations omitted). Furthermore, the Restatement

6

of the Law, Second, Judgments explains that

> [w]here an administrative agency is engaged in deciding specific legal claims or issues through a procedure substantially similar to those employed by courts, the agency is in substance engaged in adjudication. Decisional processes using procedures whose formality approximates those of courts may properly be accorded the conclusiveness that attaches to judicial judgments.

Restatement of the Law, Second, Judgments, § 83, comment b.

Here, the General Assembly has specifically authorized local boards of elections to resolve factual disputes regarding a candidate's eligibility to run for office, see OCGA § 21-2-6 (b), (c), making them the finders of fact and weighers of the credibility of evidence. See id. at (e) (in reviewing a board of elections' decision, a superior court's "review shall be conducted by the court without a jury and shall be confined to the record. The court shall not substitute its judgment for that of the [board of elections] as to the weight of the evidence on questions of fact"). Furthermore, with regard to challenges based on a candidate's residency, the General Assembly has formulated rules to guide local boards of elections, see OCGA § 21-2-217, and has prescribed basic procedural requirements for adjudication of such challenges. See OCGA § 21-2-6 (b) (notice requirements); id. at (e) (appeal procedure). It is true, however, that

7

local boards of elections do not operate under the same extent of procedural rules as some other boards to whose rulings our courts have accorded preclusive effect. See, e.g., Blackwell v. Ga. Real Estate Comm., 205 Ga. App. 233, 234 (421 SE2d 716) (1992) (holding that a decision by the Georgia Real Estate Commission was entitled to preclusive effect); OCGA § 43-40-26 (providing that the hearings of the Georgia Real Estate Commission must be held in accordance with the Georgia Administrative Procedure Act). However, because the Baker County Board of Elections was resolving a factual dispute through procedures that are sufficiently similar to those of courts and because the minutes of the board of elections' hearing in this case show that both sides to the controversy had the right to be heard and present evidence and that the challenger was given a full and fair opportunity to contest Heard's residency, we conclude that the board was acting as a "court of competent jurisdiction" for purposes of res judicata.[1]

---

[1] The fact that the board's decision was not appealed to superior court does not diminish its preclusive effect. See Hansche v. City of Atlanta Police Dept., 242 Ga. App. 606, 608 (530 SE2d 512) (2000) (holding that an unappealed award of the Board of Workers' Compensation was entitled to preclusive effect in a later action in superior court); Restatement of the Law, Second, Judgments, § 83, comment a ("An administrative adjudication becomes preclusive when it has become final . . . . It is not necessary that the administrative adjudication have been reviewed and

(b) We also conclude that there is an identity of causes of action. "A cause of action has been deemed to be 'the entire set of facts which give rise to an enforceable claim.'" Crowe v. Elder, 290 Ga. 686, 688 (723 SE2d 428) (2012). Appellants' claim that Heard was not qualified to be on the school board because she did not reside in Baker County for a year before the November 6, 2012 election, see OCGA § 45-2-1 (1), is the same claim that was made in Cowart's pre-election challenge, and both Cowart and Appellants relied on the same relevant facts — Heard's voter registration records — to attempt to prove that Heard did not reside in Baker County. And the claim that was asserted in Appellants' amended complaint — that Heard was not a resident of the school district in which she sought election, see OCGA § 20-2-51 — was based on the same set of facts that Appellants used to support their allegations under OCGA § 45-2-1. Significantly, Appellants did not allege any change in Heard's residency since the November 2012 election,[2] nor have they presented

affirmed by a court.").

[2] For example, Appellants did not allege that Heard became a resident of the school district in Baker County in which she sought election and that she then moved out of that district once she took office. See OCGA § 20-2-51 (b) ("Whenever a member of a local board of education moves that person's domicile from the district which that person represents, such person shall cease to be a member of such local

9

any evidence in support of any of their claims other than pre-election voter registration records. For these reasons, we conclude that the pre-election and post-election challenges to Heard's right to hold office involved the same claim for res judicata purposes. See Crowe, 290 Ga. at 688 (holding that, because a fraud claim filed in probate court and a subsequent breach of contract claim filed in superior court were based on the same allegations of misconduct, there was an identity of causes of action); State ex rel. Tremmel v. Erie County Bd. of Elections, 917 NE2d 792, 795 (Ohio 2009) (holding that a prior decision by the local board of elections that appellant was not a resident of the county and thus not entitled to vote barred appellant from re-litigating the issue in a later action, since there was not a change in circumstances).

(c) We turn next to whether Appellants are in privity with Cowart. "A privy is generally defined as 'one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.'" See Brown & Williamson Tobacco Corp. v. Gault, 280 Ga. 420, 421 (1) (627 SE2d 549)

board of education, and a vacancy shall occur.").

10

(2006) (citation omitted). Here, Cowart and Appellants have an identity of interests. As residents and voters of Baker County, they have a common interest in having the public offices in their community held by legally qualified persons, and the relevant statutes give them standing to bring challenges to enforce that interest. See OCGA § 21-2-6 (b) ("any elector who is eligible to vote for any such candidate may challenge the qualifications of the candidate by filing a written complaint with the [board of election] giving the reasons why the elector believes the candidate is not qualified to seek and hold the public office for which the candidate is offering"); OCGA § 9-6-60 (saying that a "person" interested in a public office may seek a writ of quo warranto "to inquire into the right of any person to any public office"); McCullers v. Williamson, 221 Ga. 358, 360 (1) (144 SE2d 911) (1965) (holding that residents and taxpayers of Walton County had a sufficient "interest" in the offices of the local board of education to give them standing to file a quo warranto action). See also In the Matter of Election Contest Filed by Coday, 130 P3d 809 (IV) (Wash. 2006) (holding that a voter in an election contest challenging the results of the governor's election was in privity with a voter who had earlier filed the same challenge).

11

Not only do Appellants have a common interest with Cowart, that interest is a public concern, as opposed to a private right. See Richards v. Jefferson County, 517 U. S. 793, 803 (116 SCt 1761, 135 LE2d 76) (1996) (saying that as to cases that involve only public concern, such as "an alleged misuse of public funds," "we may assume that the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all"). And in Walker v. Hamilton, 210 Ga. 155 (2) (78 SE2d 511) (1953), we held that a judgment on a prior action brought by a taxpayer to contest the right of a mayor to hold office had preclusive effect when the same action was subsequently filed by another taxpayer.

> Where a taxpayer or property-owner brings an action against a county or its officers upon a matter of public and general interest to all other taxpayers of such political subdivision, and the action either expressly or by necessary implication is on their behalf, they are equally bound by the adjudication, and a judgment is a bar to any subsequent proceeding by them or any of them seeking similar relief upon the same facts.

Id. at 156. Thus, although the general rule is that a "judgment binds only the parties to the case," we conclude that this case falls within the exception to that rule for nonparties who are adequately represented by a party with the same

12

interest. <u>Southern LNG, Inc. v. MacGinnitie</u>, 294 Ga. 657, 663, n. 12 (755 SE2d 683) (2014).

Having determined that the trial court properly dismissed Appellants' complaint based on the doctrine of res judicata, we need not address the other issues raised by Appellants.

<u>Judgment affirmed. All the Justices concur.</u>

Decided June 30, 2014.

Quo warranto. Baker Superior Court. Before Judge Smith, Senior Judge.

<u>Maurice L. King, Jr.</u>, for appellants.

<u>Lawton C. Heard, Jr.</u>, for appellee.