Filed 11/06/23

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-00998

| Douglas Weston et al v. The City of Winooski |
| --- |

## RULING ON MOTION TO DISMISS

Title:       Motion to Dismiss (Motion: 1)
Filer:       Stephen D. Ellis, Esq.
Filed Date:  April 17, 2023

Plaintiffs in this case challenge the constitutionality of an amendment to the City of Winooski's charter that permits lawful Winooski residents who are not citizens to vote in municipal elections involving school boards and education budgets. A prior case upheld a similar statute allowing noncitizen voting in local elections. *See* Ferry v. City of Montpelier, 2023 VT 4. Plaintiffs argue that this case is distinguishable because school budget votes, although local, have statewide impacts. The City of Winooski ("the City") has filed a motion to dismiss, arguing that (1) the institutional plaintiffs lack standing and (2) the complaint is barred by res judicata.[1] The court held oral argument on September 13 and post-hearing memoranda were filed on October 4.

### Background

In 2021, Douglas Weston, The Vermont Republican Party, The Republican National Committee, and nine other individuals filed a complaint against the City and Carol Barrett, in her official capacity as the City Clerk for the City of Winooski ("Weston I"), challenging the constitutionality of the same amendment to the City's charter that

---

[1] The State intervened as a defendant to defend the constitutionality of an act of the Legislature and filed a memorandum in support of the City's motion to dismiss. *See* V.R.C.P. 24(d).

1

they challenge here, 24 App. V.S.A. ch. 19, § 202(b).[2]  On the same day that <u>Weston I</u> was filed, a companion case was filed in Washington County by Charles Ferry and nine other individuals, including Douglas Weston, against the City of Montpelier and John Odum, in his official capacity as the City Clerk for the City of Montpelier ("<u>Ferry</u>"), challenging a similar amendment to Montpelier's charter, 24 App. V.S.A. ch. 5, § 1501(a).[3]  The Vermont Republican Party and The Republican National Committee were also plaintiffs in <u>Ferry</u>.

The basis of the plaintiffs' arguments in both <u>Weston I</u> and <u>Ferry</u> were that the Winooski and Montpelier amendments to the respective city's charters violated the voter-eligibility requirements set forth in Chapter II, § 42 of the Vermont Constitution. The relevant portion of this section of the Vermont Constitution provides:

> Every person of the full age of eighteen years who is a citizen of the United States, having resided in this State for the period established by the General Assembly and who is of a quiet and peaceable behavior, and will take the following oath or affirmation, shall be entitled to all the privileges of a voter of this state:

> You solemnly swear (or affirm) that whenever you give your vote or suffrage, touching any matter that concerns the State of Vermont, you will do it so as in your conscience you shall judge will most conduce to the best good of the same, as established by the Constitution, without fear or favor of any person.

The defendants in both <u>Weston I</u> and <u>Ferry</u> filed motions to dismiss the complaints.  The Superior Court in <u>Ferry</u> issued its ruling first, holding that (1) two individual plaintiffs who were Montpelier voters had standing to challenge the amendment and (2) the amendment did not violate the Vermont Constitution.  <u>Ferry v. City of Montpelier</u>, No. 21-CV-2963, 2022 WL 1242688 at *1–2, *5–7 (Vt. Super., Apr. 1,

---

[2] <u>Weston I</u> was docket number 21-CV-2965.

[3] The Montpelier case was docket number 21-CV-2963.

2022) (Mello, J.). The trial court in Weston I, relying on Judge Mello's decision in Ferry, held that it was "improbable" that any plaintiff other than Weston had standing to challenge the amendment because he was the only one who resided in and voted in Winooski. Weston I, No. 21-CV-2965, slip op. at 1 (Vt. Super., September 1, 2022) (Hoar, J.). However, because one plaintiff's standing was sufficient to consider the constitutional question without determining the standing of the other plaintiffs asserting the same claim, the court addressed the constitutional issue and held that the Winooski charter amendment did not violate the Vermont Constitution, id. at 2. Judge Hoar wrote:

> [T]he Vermont Supreme Court has made clear that Chapter II, § 42 of the Vermont Constitution does not apply to local elections. . . . As Plaintiffs' challenge rests entirely on the assertion that § 42 precludes the Legislature from extending the franchise to non-citizens, this observation is fatal to their claims.

Id. at 2.

Plaintiffs in both Ferry and Weston I appealed the dismissal of their complaints to the Vermont Supreme Court. The Supreme Court addressed Ferry first and affirmed the dismissal. Ferry v. City of Montpelier, 2023 VT 4, ¶ 1. On the issue of standing, the Court wrote:

> [A] plaintiff alleges an injury in fact and thus has standing to sue under Chapter II, § 42 bringing a facial challenge to a law when: that law on its face changes the qualifications for voters as defined in § 42 and the plaintiff is a voter within the voter pool for which those qualifications have been changed.

Id. ¶ 21 (footnote omitted). Because the complaint alleged facts establishing standing for two Montpelier residents, the Court did not address whether the institutional plaintiffs or other non-Montpelier residents also had standing. Id. ¶ 25.

3

Turning to the merits of the case, the Court noted that the plaintiffs were making a facial constitutional challenge. "'In a facial challenge, a litigant argues that no set of circumstances exists under which a statute or regulation could be valid' and requests the court [to] 'invalidate the contested law.'" Id. ¶ 26 (quoting In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 22, 212 Vt. 554). The Court reviewed the text of Chapter II, § 42 and how it has been amended from the time the Vermont Constitution was first adopted in 1777 to the present day. Id. ¶¶ 28–31. The Court concluded that § 42 "does not apply to municipal elections." Id. ¶ 38. The Court was not convinced by the plaintiffs' argument that § 42 applied to "any election with an extra-municipal impact." Id. ¶ 39. The Court wrote: "[M]unicipalities generally remain entities that control local affairs," and "municipal officers today are still accountable to their local electorate" rather than to all voters across the State. Id. ¶ 46 (citing Rowell v. Horton, 58 Vt. 1, 5 (1886)). The Court continued:

> It is fundamentally different to act as a statewide officer compared to a municipal officer in terms of powers and accountability. Therefore, the structure of the Vermont Constitution and the Constitution's treatment of municipalities in the scheme of statewide governance indicate that Chapter II's requirements for statewide elections and representatives, including those in § 42, do not apply to municipal elections and officers.

Id. Rejecting the plaintiffs' argument that a municipal vote with "extra-municipal impact, no matter how tenuous, constitutes a statewide issue subject to the requirements of § 42" as "untenable and not grounded in history," id. ¶ 48, the Court affirmed the trial court's dismissal of the complaint. Id. ¶ 52.

The plaintiffs in Weston I agreed to dismiss their appeal after the Supreme Court issued its decision in Ferry. Weston v. City of Winooski, No. 22-AP-261, Entry Order (Vt. February 9, 2023).

Discussion

Michael Myers is the only plaintiff in this case who was not also a party in Weston I.  Myers is similarly situated to Weston, however, and the two individuals are described identically in the complaint as "registered voter[s] in Winooski" who "intend[] to participate in future elections, including those involving education matters."  Complaint, ¶¶ 3, 4.  The City, which is the only defendant in this case, was also a defendant in Weston I.

The City argues that Plaintiffs' complaint is barred by res judicata.  Motion at 5–8.[4]  Res judicata, also known as claim preclusion, "'bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical.'"  Sutton v. Purzyki, 2022 VT 56, ¶ 21 (quoting Lamb v. Geovjian, 165 Vt. 375, 379 (1996) (quotation omitted)).  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" claim preclusion "protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting Montana v. United States, 440

---

[4] Plaintiffs contend in a post-hearing memorandum that the City waived its res judicata claim at oral argument.  Supplemental Brief at 5.  They are correct that such an argument is an affirmative defense that is typically waived if not raised. In re Joyce, 2018 VT 90, ¶ 25, 208 Vt. 226. However, it was initially raised in Defendant's motion. The "waiver rule is premised on the necessity to provide notice to all parties regarding the issues . . . , and, accordingly we have permitted exceptions to this general rule where 'notice considerations are not implicated.'" Id. (quoting Merrilees v. Treasurer, 159 Vt. 623, 623 (1992) (mem.)). Even when not raised by the parties, if they are given the chance to brief the issue, a court may "independently raise and decide whether res judicata barred the action[.]" Id.; see Merrilees, 159 Vt. at 623 ("[A]mple and persuasive precedent allows a court to raise res judicata on its own where the parties have failed to raise it and consequently waived the right to do so."); Arizona v. California, 530 U.S. 392, 412 (2000) (recognizing that courts may dismiss cases *sua sponte*, on preclusion grounds, to avoid unnecessary judicial waste of resources). Because res judicata is a doctrine intended to protect broader interests than those of the individual litigant, as discussed below, the court will proceed to consider the argument.

U.S. 147, 153–54 (1979)); *see also* <u>Sutton</u>, 2022 VT 56, ¶ 21 (res judicata "'advances the efficient and fair administration of justice' and 'flows from the fundamental precept that a final judgment on the merits puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever'") (quoting <u>Faulkner v. Caledonia Cnty. Fair Ass'n</u>, 2004 VT 123, ¶¶ 8–9, 178 Vt. 51 (further quotation and citation omitted)).

Plaintiffs contend that the doctrine of res judicata does not apply to preclude this case because neither the parties nor the claims are identical, or substantially identical, to those in <u>Weston I</u>. Opposition at 9–12. The only plaintiff here who was not a party to the prior case is Myers. When determining whether a party who was not named in an earlier action is barred from litigating their claim in a later action, the court considers whether that party has privity with a party from the earlier action. *See* <u>Lamb</u>, 165 Vt. at 380 ("Identity of parties exists where the parties or their privies are involved in both actions."). "'A privity relationship generally involves a party so identified in interest with [another] party that they represent one single legal right.'" <u>Bain v. Hofmann</u>, 2010 VT 18, ¶ 10, 187 Vt. 605 (quoting <u>Lamb</u>, 165 Vt. at 380 (internal quotation omitted)); *see* <u>State ex rel. Barksdale v. Litscher</u>, 685 N.W.2d 801, 806 (Wis. 2004) ("Privity compares the interests of a party to a first action with a nonparty to determine whether the first action protected the interests of the nonparty."). If the parties in two different proceedings have "substantially the same interest" in the litigation, even though they are not strictly identical, the parties have privity. <u>Bain</u>, 2010 VT 18, ¶ 10; *accord* <u>First Wis. Mortg. Trust v. Wyman's, Inc.</u>, 139 Vt. 350, 358–59 (1981) ("The test for privity, for the purposes of res judicata, is whether the parties have really and substantially the same interest in the property in issue.").

Plaintiffs do not argue that Myers has an interest that differs in any way from that of Weston. Rather, they rely on the cases of <u>Taylor v. Sturgell</u>, 553 U.S. 880 (2008), and <u>Richards v. Jefferson Cnty., Alabama</u>, 517 U.S. 793 (1996), to argue that Myers should not be bound by the outcome of a case to which he was not a party. Opposition at 9–11. <u>Taylor</u> addressed the preclusive effect of a federal-court judgment under federal common law. 533 U.S. at 891. The issue in that case was whether a case brought by one private citizen seeking documents from a government agency (Herrick) should bar a second action brought by a different private citizen against the government (Taylor), when the relief sought by the individual plaintiffs was the same. <u>Taylor</u>, 553 U.S. at 885. Herrick was the only plaintiff in the first action and did not represent anyone other than himself. The United States Supreme Court addressed whether Taylor, the plaintiff in the second action, was "virtually represented" by Herrick in the earlier case. <u>Id</u>. In finding that Taylor should not be barred, the Court found that no established grounds for nonparty preclusion applied to the facts of that case:

> There is no indication that Taylor agreed to be bound by Herrick's litigation, that Taylor and Herrick have any legal relationship, that Taylor exercised any control over Herrick's suit, or that this suit implicates any special statutory scheme limiting relitigation. Neither the FAA nor Fairchild contends otherwise.
>
> It is equally clear that preclusion cannot be justified on the theory that Taylor was adequately represented in Herrick's suit. Nothing in the record indicates that Herrick understood himself to be suing on Taylor's behalf, that Taylor even knew of Herrick's suit, or that the Wyoming District Court took special care to protect Taylor's interests. Under our pathmarking precedent, therefore, Herrick's representation was not "adequate." See *Richards [v. Jefferson Cnty.],* 517 U.S. 793, 801–802 (1996).

<u>Id</u>. at 904–05. Stating that "the established grounds for nonparty preclusion described in this opinion" apply to "[t]he preclusive effects of a judgment in a federal-question

7

case decided by a federal court," id. at 904, the Court contrasted the case with one in which "a taxpayer challenges 'an alleged misuse of public funds' or 'other public action,'" id. at 902 (quoting Richards, 517 U.S. at 803). In that situation, "the suit 'has only an indirect impact on [the plaintiff's] interests,'" and "'the States have wide latitude to establish procedures . . . to limit the number of judicial proceedings that may be entertained.'" Id. (quoting Richards, 517 U.S. at 803).[5]

In Richards v. Jefferson Cnty., Alabama, 517 U.S. 793 (1996), the plaintiffs were representatives of a class of employees working in Jefferson County who were challenging the validity of an occupation tax imposed by the county on the individual employees. Richards, 517 U.S. at 795. An earlier case had been brought by the city of Birmingham, and was consolidated for trial with a separate suit brought by three county taxpayers. Id. The county argued that res judicata barred the second lawsuit because the court had upheld the tax in the earlier action. On appeal, the United States Supreme Court stated:

> [A] prior proceeding, to have binding effect on absent parties, would at least have to be "so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue."

Richards, 517 U.S. at 801 (quoting Hansberry v. Lee, 311 U.S. 32, 43 (1940)). The Court concluded that the plaintiffs in the later case were not in privity with the plaintiffs from the earlier case. It explained that there are two different types of actions taxpayers may

---

[5] Some courts have interpreted Taylor to mean that its holding does not bind State courts when federal questions are not at issue. *See, e.g.,* Friends of Gualal River v. Gualala Redwood Timber, LLC, 552 F.Supp.3d 924, 936 (N.D. Cal. 2021) (Taylor's virtual representation theory of privity is limited to federal-question cases decided by federal courts and does not alter California's "community of interests" approach to privity); State ex rel Schachter v. Ohio Pub. Emps. Ret. Bd., 905 N.E.2d 1210, 1218 (Ohio 2009) (Taylor's holding on virtual representation to establish privity only applies to federal-question cases decided by federal courts). The court does not find it necessary to reach that question today.

bring: (1) those in which the taxpayer complains about an alleged misuse of public funds[6] or other public action that only indirectly impacts his or her interests[7] and (2) those in which the taxpayer challenges, on federal constitutional grounds, a State's attempt to levy personal funds. Id. at 803. Concluding that the plaintiffs' claim fell into the second category, the Richards Court's holding was based, in part, on the fact that the plaintiffs' "underlying rights [were] personal in nature." Id. at 802 n.6. The Court noted that "State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes." Id. at 797.

The Vermont Supreme Court has not had occasion to consider how the holdings in Taylor or Richards would apply to a case such as this, where the plaintiffs' interests are shared among similarly situated voters and are not personal in nature. Other courts, however, have addressed whether res judicata bars repeated actions by different voters challenging the same issue. In Lilly v. Heard, 761 S.E.2d 46 (Ga. 2014), for example, the plaintiff voters filed an action to remove the defendant from the local board of education. The defendant moved to dismiss on res judicata grounds because another voter (Cowart) had brought the same challenge and lost in an earlier lawsuit. Id. at 48.

---

[6] Richards cited Massachusetts v. Mellon, 262 U.S. 447 (1923), as an example of this type of case, which stated that "[t]he administration of any statute, likely to produce additional taxation . . . upon a vast number of taxpayers, . . . is essentially a matter of public and not of individual concern." Mellon, 262 U.S. at 487.

[7] Richards cited Stromberg v. Board of Education of Bratenahl, 413 N.E.2d 1184 (Ohio 1980), and Town of Tallassee v. State, 89 So. 514, 517 (Ala. 1921), as examples of public actions that only indirectly impact a plaintiff's interests. 517 U.S. at 803. In Stromberg, the Supreme Court of Ohio held that a taxpayer was barred by res judicata from challenging the dissolution of a local school district after the board of education lost the same challenge in an earlier case, following "extensive and protracted" litigation, because the taxpayer's interest was "shared in common with the public" and did not involve a "private right." Stromberg, 413 N.E.2d at 1185, 1186. "[A] judgment for or against a governmental body is binding and conclusive as res judicata on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest." Id. In Town of Tallassee, the Supreme Court of Alabama barred on res judicata grounds a challenge to the incorporation of a municipality when the same challenge had been litigated by other plaintiffs in a prior case. Town of Tallassee, 89 So. at 171. The court reasoned that neither case involved "the assertion or protection of any private right, but merely acts for and on behalf of the public generally." Id.

The Supreme Court of Georgia addressed the privity between the plaintiffs in the two lawsuits:

> Here, Cowart and Appellants have an identity of interests. As residents and voters of Baker County, they have a common interest in having the public offices in their community held by legally qualified persons . . . . Not only do Appellants have a common interest with Cowart, that interest is a public concern, as opposed to a private right. . . . [A]lthough the general rule is that a judgment binds only the parties to the case, we conclude that this case falls within the exception to that rule for nonparties who are adequately represented by a party with the same interest.

Id. at 50–51 (quotations omitted) (citing Richards, 517 U.S. at 803 and other cases); *see also* Nolles v. State Comm. for the Reorganization of School Dists., 524 F.3d 892, 904 (8th Cir. 2008) (applying Nebraska law, court found res judicata barred second set of voters from raising same claim that another unrelated group of voters had raised in earlier action because "due process concerns that limit the application of the res judicata doctrine to nonparties are lessened when the rights asserted involve issues of public concern rather than private rights")[8]; Gustafson v. Johns, 434 F.Supp.2d 1246, 1257–58 (S.D. Ala. 2006) (holding res judicata barred successive lawsuits by different plaintiffs challenging legislative redistricting plans: "[t]he remedy for any individual voter's claim of unequal weighting necessarily affects the rights of all other voters"; and "[a] state should not face an endless stream of lawsuits after each redistricting."); Matter of Pearsall-Stipek, 961 P.2d 343, 346 (Wash. 1998) (en banc) ("Mr. Bennett's interests in judicial resolution of the sufficiency of a recall petition are no different from that of any other citizen: proceeding to the signature gathering stage of the recall process. To hold

---

[8] Plaintiffs argue that Nolles is no longer good law because it relied on the "virtual representation" theory later rejected in Taylor. However, despite using that term, the case did not apply the "all-things-considered balancing approach" criticized in Taylor—553 U.S. at 901—but instead analyzed the question in terms of the distinction between individual rights and issues of public concern.

otherwise would permit repeated litigation of the same charge based on the same facts by merely substituting a different named party.").

Courts have also held that res judicata bars successive lawsuits where plaintiffs were challenging the constitutionality of statutes or other official action that affected members of the public similarly. *See, e.g.,* Atwell v. City of Rohnert Park, 238 Cal. Rptr. 3d 248, 256–57 (2018) (private citizens were barred by res judicata from challenging city council's approval of retail store expansion because Sierra Club had made and lost similar challenge; privity, for purposes of res judicata, "does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation"); Nelson v. Chicago Park Dist., 945 N.E.2d 634, 643-45 (Ill. App. Ct. 2011) (barring on res judicata grounds second lawsuit challenging use of public funds to construct soccer field because parties shared same legal interests); Penner v. Cent. Puget Sound Reg'l Transit Auth., 525 P.3d 1010, 1015–19 and n.9 (Wash. Ct. App. 2023) (applying res judicata to bar consecutive lawsuits challenging constitutionality of excise tax because plaintiffs' interests in both actions were public and identical, distinguishable from Taylor v. Sturgell, where interest "was specific to individuals and would not have inured to the benefit of the public").

The court finds the distinction in these cases between private rights and public rights to be persuasive. If every taxpayer or voter could bring a lawsuit identical to ones other taxpayers or voters have brought asserting rights common to every taxpayer or voter, merely because they bear a different name, the legal system could grind to a halt. Although Plaintiffs theorized at oral argument that a court could at some point start sanctioning litigants for asserting frivolous claims, that is no answer: such litigation

would require sanctions hearings in each case, tying up the same limited judicial resources.

Turning now to the facts here, the court considers (1) whether Myers' interests are the same as Weston's were in Weston I, and (2) whether his interests were adequately represented by Weston in the prior case. The complaint does not distinguish between Myers and Weston in any respect: they are both described identically as Winooski voters. Weston was similarly identified as a Winooski voter in Weston I. The court concludes that Myers' interest is the same as Weston's was in Weston I. Weston's and Myers' claims are not individualized, or personal in nature, as the plaintiffs' claims were in Taylor and Richards. Instead, their claims are more like the common public interest claims at issue in Lilly v. Heard and the other cases discussed above. A successful challenge to the Winooski charter amendment in Weston I would have resulted in relief to Myers (and all other Winooski voters unhappy with the amendment), not just Weston. Neither Weston nor Myers contends that Weston was denied a full and fair opportunity to litigate his claim in Weston I, which would implicate rights that are "fundamental in character." *See* Richards, 517 U.S. at 797 (extreme applications of res judicata may be inconsistent with federal right "fundamental in character"). For these reasons, and for the reasons the courts found res judicata barred the lawsuits at issue in the cases cited above, the court concludes that Myers is in privity with Weston for purposes of the res judicata analysis.

The court next considers whether the subject matter and causes of action in Weston I and this case are identical, or substantially identical. *See* Sutton, 2022 VT 56, ¶ 21. In Weston I, Plaintiffs brought a facial constitutional challenge to the Winooski charter amendment, and here, they assert an "as-applied" constitutional challenge to the

12

same charter amendment.[9] When claims in two different actions are identical or substantially identical, the doctrine of res judicata bars not only claims that were raised, but also those that could have been raised, in the earlier litigation. Sutton, 2022 VT 56, ¶ 21; *accord* In re Burns 12 Weston Street NOV, 2022 VT 37, ¶ 13 (citing In re 15–17 Weston Street NOV, 2021 VT 85, ¶ 23, 216 Vt. 20). "[C]laim preclusion may apply even though the second action relies on different evidence or legal theories, or seeks relief not requested in the first action." Sutton, 2022 VT 56, ¶ 23 (citing Faulkner, 2004 VT 123, ¶ 14 and Restatement (Second) Judgments § 25 (1982)).

"To determine whether two causes of action, including one not raised in an earlier proceeding, are 'sufficiently similar for claim preclusion purposes,' [the court] focus[es] on whether the claims arise 'from all or any part of the [same] transaction, or series of connected transactions.'" In re Burns 12 Weston Street NOV, 2022 VT 37, ¶ 14 (quoting Faulkner, 2004 VT 123, ¶¶ 11–12) (further quotation and citation omitted)). The scope of a transaction is based on "'such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit[.]'" Sutton, 2022 VT 56, ¶ 23 (quoting Faulkner, 2004 VT 123, ¶ 13) (further quotation and citation omitted).

Plaintiffs here challenge the same charter amendment that was at issue in Weston I. This clearly passes the transactional test Vermont uses to determine whether claims raised in two different actions are sufficiently similar to be subject to the doctrine of res judicata. Both claims certainly form a convenient trial unit. *See* Sutton, 2022 VT

---

[9] When making an as-applied challenge, "a party claims that a statute or regulation is invalid as applied to the facts of a specific case," and the remedy is narrower in scope than it is in a facial challenge. In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 22. Even if a court finds in favor of a party making an as-applied challenge, this does not mean the challenged law is invalidated altogether, as it does if a party is successful in making a facial challenge. In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 12.

56, ¶ 23. Plaintiffs should have raised their as-applied challenge to the charter amendment in <u>Weston I</u>. *See* <u>In re LaBerge NOV</u>, 2016 VT 99, ¶¶ 25–28, ¶ 25 n.2, 203 Vt. 98 (where it was not clear whether plaintiffs were making facial or as-applied challenge to ordinance, court considered both). Their decision not to assert both types of constitutional challenges in <u>Weston I</u> does not preclude the doctrine of res judicata from barring this case.[10] As the Eight Circuit noted in <u>Nolles</u>, "If preclusion is not proper here and the Plaintiffs in this case are not successful, nothing will prevent the next group of voters . . . from filing another suit. This entails a significant cost to the judicial system and discourages the principles and policies the doctrine of *res judicata* was designed to promote." 524 F.3d at 904 (quotation and citation omitted).

<u>Conclusion</u>

The City's motion to dismiss Plaintiffs' complaint is granted.[11]

Electronically signed on November 6, 2023 pursuant to V.R.E.F. 9(d).

Helen M. Toor
Superior Court Judge

---

[10] Plaintiffs cite <u>Whole Woman's Health v. Hellerstedt</u>, 579 U.S. 582, 138 S. Ct. 2292 (2016), *overruled on other grounds by* <u>Dobbs v. Jackson Women's Health Org.</u>, 142 S. Ct. 2228 (2022), for the proposition that an as-applied challenge may follow a failed facial challenge without being barred by res judicata. Opposition at 12. The Court's rationale in <u>Hellerstedt</u>, however, was that new facts that developed since the first case might show that "constitutional harm, which seemed too remote or speculative to afford relief at the time of an earlier suit, was in fact indisputable." <u>Hellerstedt</u>, 138 S. Ct. at 2305. Plaintiffs do not proffer any such changed facts.

[11] Given this ruling, the court need not address the City's argument that the complaint should be dismissed due to the institutional plaintiffs' lack of standing. *See* <u>Ferry</u>, 2023 VT 4, ¶ 25.